HUDSON COUNTY COURT OF COMMON PLEAS.

ELSA MOLLER, PETITIONER-APPELLANT, v. ATLAS STEEL PRODUCTS CO., RESPONDENT-APPELLEE.

Decided March 26, 1948.

For the petitioner-appellant, *Chris G. Pappas* (*Louis Steisel* and *Elsie L. White,* of counsel).

For the respondent-appellee, *O'Mara, Conway & Schumann* (*Charles A. Gormley,* of counsel).

DREWEN, C. P. J. Petitioner's decedent collapsed and died instantly while at his work. He was 57 years of age and had apparently been in continuous good health. He was a glazer and his employment at the time was in the removal of putty from steel window frames, in which he used an air chisel connected by hose with a movable compressor standing on the floor. The chisel, which the user held in both hands, weighed about six or seven pounds; the added weight of the connected hose made a total of ten pounds. Whether or not decedent was actually supporting the weight of the hose at the time he fell, or, indeed, whether he was then actually operating the chisel, is not at all clear from the testimony.

According to fellow workers "sometimes the putty chips off light, sometimes hard * * * at times it doesn't take much effort. * * * sometimes you got to put some pressure on it if the putty is hard; if the putty is soft it goes very

easy." There was nothing extraordinary in decedent's work. He had been doing the same thing steadily for a considerable period. It was his customary occupation. Counsel make particular effort, and by a rather free use of leading questions, to show a significant degree of strain or exertion in decedent's activity prior to his death, but entirely without effect, as we view the record.

Is there the requisite proof that death was causally related to the employment? We judge not. Decedent had just returned from lunch and had scarcely resumed his work when he fell dead. One of petitioner's medical experts gives it as his opinion that death "was caused by anoxia secondary to the effort in which he was engaged;" that having just eaten lunch he (decedent) was subject to a decrease in the circulation to the heart; that the "effort of chipping and the vibration set up by the hammer * * * was enough to cause a relative deficiency to the heart muscle with resultant death of the heart muscle known as myocardial infarction, with death." Nothing is disclosed with respect to the "effort of chipping" more than we have already mentioned; and concerning any "vibration set up by the hammer" there is simply no showing of a degree of vibration such as to render vibration an evidential factor in the case. Surely we would not be warranted in assuming that vibration, without more and in the absence of further qualifying evidence, is of particular consequence. The medical opinions adduced on petitioner's behalf are in our judgment utterly speculative, resting on no more than the mere coincidence of employment and death.

The fact alone that one dies at his work does not establish causal relation. True, no particular degree of rigor in the work need be shown, but there must be circumstances from which an inference of cause and effect can be fairly drawn. We are taught by repeated and universal experience that death comes to men asleep or awake, in every circumstance of mental and bodily ease. When it occurs therefore during the activities of normal employment, likely as not a mere coincidence is thus presented and nothing more. The doubt must be resolved by affirmative proof, circumstantial or direct. In the present case there was an obvious effort to resolve it,

but without success. How hard the experts had to look for things with which to make a nexus may be inferred from such statements as these: "The mere fact that he died in these circumstances is an accident." "He was on a ladder, which is not a normal condition for a working man to be in * * * that in itself is evidence." "He was standing on the ladder which is a little harder than standing on the ground." If there is any force at all in the medical pronouncements of petitioner's witnesses, and we judge there is none, it is certainly counter-vailed by the more thorough and convincing testimony of Dr. Clark for respondent.

Petitioner relies mainly on the principles expressed by this court in *Rivers* v. *East Coast Shipyards, Inc.,* 24 *N. J. Mis. R.* 223; 48 *Atl. Rep.* (*2d*) 311. The difference between the two cases is a difference in proof, and a contrasting of the facts in the one with those in the other is a conclusive answer to petitioner's argument from the Rivers decisions. There the decedent had a definite prior history of grave cardiac diagnosis. Because of it he had been dismissed from his previous employment on a medical disqualification. Anything like a preliminary examination for his final employment would most certainly have barred him. The work in which he had been shortly engaged at the time of his death was rigorous and would have been so even for a man in good health; while his known prior occupation had required no more than easy physical effort. It is, however, concerning the work at which he died, sufficient to say that in his impaired condition it was too much for him. All the antecedent facts and circumstances in the Rivers case were a sure prophecy that work like that of his final employment would soon result in his death, just as it did. Circumstantial evidence in that case carried the point of causal relation beyond question. In no respect does the present record present a parallel.

The petition is dismissed.