## Commonwealth *v.* Olitsky, Appellant.

146

Argued April 12, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ.

*Charles B. Jarrett,* for appellant.

*William Claney Smith,* Assistant District Attorney, with him *Edward C. Boyle,* District Attorney, for appellee.

OPINION BY ERVIN, J., June 11, 1957:

Appellant was found guilty on 14 indictments, 11 of which charged forgery and fraudulently altering and uttering a written instrument, two of which charged unlawful sale of narcotic drugs without a prescription and one of which charged unlawful sale of hypnotic drugs. While sentence was imposed upon each indictment, we are primarily concerned with Indictment No. 290 May Sessions, 1952, charging the sale of narcotic drugs, to wit: opium, to one Alice Brewster without a prescription, and Indictment No. 291 May Sessions, 1952, charging the sale of hypnotic drugs to one Alice Brewster without a prescription, because in the first

indictment a sentence of not less than two and one-half years nor more than five years was imposed and on the second indictment a fine of $1,000.00 was imposed. On each of the other 12 indictments, the defendant was sentenced to pay a fine of six and one-quarter cents and to undergo imprisonment for not less than two and one-half nor more than five years, to run concurrently with the first sentence above mentioned. Alice Brewster was the chief witness for the Commonwealth on Indictments Nos. 290 and 291 May Sessions, 1952, charging the sale of narcotic and hypnotic drugs to her without a prescription. She testified that she was 44 years old and had been a drug addict since she was $14\frac{1}{2}$ years old; that she had known the defendant for five years; that she dealt at his drug store; that she had been for many years an habitual user of opium but that she had ceased using it for the last two and one-half years prior to the trial. She testified that, on October 17, 1951, she entered the defendant's drug store and purchased from him five grains of powdered opium, paying him a dollar a grain for the opium. She stated that she did not have a doctor's prescription for the opium. She explained in detail how she prepared and used the drug. She also described its effect upon her and, as an habitual user, stated that she knew the drug was opium. She also testified to a further purchase on October 20, 1951 without a prescription. She testified that on November 12 and 13, 1951 she purchased certain hypnotic drugs (nembutal and tuanol) from the defendant without prescriptions. She also testified that she had been arrested for stealing mail and removing the contents and she admitted that she had spent 16 months in jail. Although she was subjected to a searching cross-examination by counsel for the defendant, the court below stated in its opinion that "Her testimony was clear and credible." The uncorroborated testimony

of a drug addict is sufficient to support a conviction for the unlawful sale of drugs. *Com. v. Aikens,* 179 Pa. Superior Ct. 501, 118 A. 2d 205. In that case, at page 507, President Judge RHODES said: "If the trier of fact, who sees and hears the witness, is satisfied that the witness was testifying truthfully, even though a drug addict, then such testimony may be sufficient to warrant a conviction of a defendant for the sale of drugs in contravention of the Anti-Narcotics Act of 1917." The defendant took the stand and denied that he had sold the drugs to Alice Brewster without a prescription.

The appellant argues that the court below erred in refusing defendant's demurrer to the evidence and motion for binding instructions at the close of the defendant's case. We are convinced that there was sufficient evidence to submit to the jury on the indictments charging the sale of the drugs to Alice Brewster without a prescription. The credibility of the witnesses was for the jury and the charge of the court with reference to the witness Alice Brewster was sufficient. The court reviewed the testimony of Alice Brewster as follows: "On cross-examination by counsel for the defendant she admitted very freely that she had been in jail, that she had been in poor health from 1948 on, that she was a habitual user, she had been arrested on March 1st, 1952 for forgery and false pretense and taken before Squire Newell on one charge of forgery and two charges of false pretense. These charges were on the same prescriptions as are involved in the case against Harry Olitzky. She also testified that she was arrested for the stealing of mail and removing the contents, in Federal Court, on February the 15th, 1952. She testified that she was in jail for some period of time. The witness Alice Brewster freely conceded that she had been an addict most of her life, at least from

the age of fourteen and a half on; she was now forty-four; up until two years ago and that now she used barbituates to excess. . . . Now you have seen the witness, and I will discuss with you the question of how you determine credibility at a future time. So much for her testimony in this case." On credibility the court charged as follows: "On the matter of credibility of witnesses I might say to you that in determining whether a witness is credible or not you must use the experience that you have gained throughout your lives as mature women. You have seen a great many people in your lifetime, have had certain amounts of business transactions and social transactions, and from those you must now determine, looking at a witness, looking at the history of a witness, her demeanor on the stand, or his demeanor on the stand, is she to be believed, is she a witness who is speaking reliably, is she a witness on which you should form your conclusions. If you so decide, then you may accept any or all of the testimony of a witness. If you decide she is not trustworthy you would reject the testimony of the witness. If you believe the evidence is substantial and convinces you beyond a reasonable doubt that the defendant is guilty, then you should so find. But the question of credibility of the witness is for you to determine, and in determining credibility you must determine motive. As a guide you must consider motive and bias and prejudice. Does the witness have any interest in the outcome of the case? Does the witness have anything to be gained by the testimony given in this case? Does the witness have any relationship to the defendant, or against the defendant, which would make that testimony unreliable. Sometimes there are witnesses who have something to gain from a lawsuit. Those are questions that you must determine in every case." The witness admitted her prior convictions on the stand and

the record of those convictions was submitted in evidence and considered by the jury. "Of course, a trial judge should warn the jury of the corrupt source of an accomplice's testimony . . . but the form of instruction lies within the discretion of the court." *Com. v. Brown,* 158 Pa. Superior Ct. 226, 44 A. 2d 524. In *Com. v. Bubna,* 357 Pa. 51, 66, 53 A. 2d 104, our Supreme Court said: "While it is the better practice for a trial judge to explain to a jury *why* the testimony of an accomplice should be considered with 'close scrutiny', i.e., carefully and critically, it is reasonable to believe that the average juror possesses sufficient intelligence to understand without specific instructions why the testimony of an accomplice is to be viewed with some suspicion and why it is not to be accepted unless it carries with it a clear conviction of its truthfulness." In the present case the trial judge reviewed the history of the witness Alice Brewster in detail and then instructed the jury concerning credibility and told them to look at the history of the witness in determining whether she is to be believed. Certainly this language was sufficient to convey to the jury the corrupt source of the testimony and was a warning to them to look at the history of Alice Brewster to determine whether she is to be believed. Appellant now, for the first time, charges that the conduct of the trial judge deprived him of a fair and impartial trial. This question was not raised below and we would be justified in not considering it here for that reason alone. However, we have read the printed record and charge of Judge ALPERN and we believe that she ably and correctly presided at a complicated trial. No objection was made nor exception taken as to her conduct. It is the right and sometimes the duty of the trial judge to interrogate witnesses. *Com. v. Del Giorno,* 303 Pa. 509, 154 A. 786. We think that the lower court merely

endeavored to clarify testimony by questions which were asked in an impartial manner. *Com. v. Watts,* 358 Pa. 92, 56 A. 2d 81.

Appellant has raised a number of questions relative to the 11 indictments charging forgery and the fraudulent altering and uttering of written instruments. These instruments were prescriptions written by various physicians for four indigent women patients whose medical care was paid for by the State Department of Public Assistance (hereinafter referred to as D.P.A.). The Commonwealth charged that the defendant filled the prescription for the patient for the exact amount called for by the doctor and then altered the prescription by raising the amount. This was accomplished either by the erasure of the original amount and the insertion of a new amount or by the addition of some figure to raise the original amount. The Commonwealth introduced into evidence the testimony of four indigent women receiving medical attention through the D.P.A., the testimony of the state investigator, William F. Haushalter, and the testimony of three physicians who wrote out the prescriptions. These four women testified that they received prescriptions from the doctor, that they took them to the defendant and that he filled them. They testified that they did not change or alter the prescriptions and they recognized their signatures upon the prescriptions shown to them. They also testified that they received the number of capsules as originally prescribed by the doctor. The doctors testified that they had written the prescriptions for certain amounts in Roman numerals and that these had been increased. For example, one doctor testified that he had written a prescription, using "XXX" to indicate 30 capsules and the prescription as exhibited to him at the trial read "XXXX" for 40 capsules. In another instance, a prescription was

shown to the doctor which contained "LXX" for 70 capsules and the doctor testified that he had not written it for 70 capsules because he would write it "XXXC". Some of the prescriptions offered in evidence rather clearly revealed, because of the difference in coloring, that the Roman numerals had been altered.

William Haushalter testified that he was Senior Inspector of Narcotics for Pennsylvania and that he made the investigation and arrest in this case. He also testified that he procured the prescriptions, which were offered in evidence, from the defendant and also from the local division of the D.P.A.

Mrs. Nina C. Miller testified that she was the Supervisor of Medical Services for the D.P.A. in Allegheny County and that she supervised the receipt of invoices and the checking of these invoices and the examination of the prescriptions. She stated that these prescriptions were written on special forms which consisted of four sheets of paper. Inserted between the first and second, the second and third and the third and fourth are sheets of carbon paper. The doctor who is writing the prescription is required to sign the original, his signature automatically carries through the carbons on to the other three sheets. The patient takes the prescription to the druggist and the patient also signs the original when the prescription is filled. The patient's signature also carries automatically through on to the other three sheets. The druggist, when he fills the prescription, also signs and his signature automatically carries through the carbons on to the other three sheets. Mrs. Miller testified that under the practice of the D.P.A. the top sheet, which is white in color, eventually goes to the Treasury Department at Harrisburg; the first copy sheet, which is blue in color, goes to the Bureau of Research and Statistics at Harris-

burg; the second copy, which is yellow in color, is kept by the local D.P.A. office in Pittsburgh; and the third copy, which is white in color, is retained by the pharmacist.

The appellant first argues that the court erred in admitting copies of the prescriptions in evidence where the original prescriptions are available and no explanation was given for the failure to produce them. He also argues that there was no proof given that the copies were the same as the originals. It is a well settled rule of evidence that an original document is the best evidence and should be produced in the trial of a case. It is equally well established that a copy of the original document may be admitted in evidence after it has been proved that the original is unavailable and that the copy, by comparison, conforms to the original. *Sanner v. U. S. Transfer Co.*, 127 Pa. Superior Ct. 191, 194, 193 A. 830; 1 Henry Pa. Evid. §290.

The appellant is charged with altering a written instrument. The first and second copies are not the only instruments involved. Each one of the four prescription sheets, as hereinbefore described, performs a function in a system devised by the Commonwealth to protect its interests. It is not necessary to prove an alteration of the first to show an alteration of the third or fourth sheets. Each sheet is a separate instrument which, if altered, constitutes an offense. Furthermore, it would appear that the carbon copies in this case were admissible under the law concerning duplicate originals, as set forth in 20 Am. Jur., Evidence, §427, as follows: "The rule which excludes evidence of copies of documents where the documents themselves are available as proof does not apply to documents and writings which are executed in duplicate or multiplicate form. It is well settled that where a writing is executed in duplicate or multiplicate, each of the parts

is the writing which is to be proved, because, by the act of the parties, each is made as much the legal act as the other. Each part of a document so executed is regarded as the primary evidence of its contents, and the original need not be produced. Thus, the different impressions of a writing produced by placing carbon paper between sheets of paper and writing upon the exposed surface are, according to the prevailing view, duplicate originals, and may be introduced in evidence without accounting for the nonproduction of the original, unless it appears that the parties did not intend such papers to operate as the original evidence of the matters therein contained." The Act of Assembly expressly provides that "Such order shall be preserved [by the druggist], for a period of two years, in such a way that it will be readily accessible to inspection by the proper authorities." Act of 1917, July 11, P. L. 758, §7, as amended, 35 PS §858. Pennsylvania has recognized the duplicate original rule. *Brenner v. Lesher*, 332 Pa. 522, 526, 2 A. 2d 731. When Mr. Haushalter, the Senior Inspector of Narcotics, procured the copies of the prescriptions from the appellant, he was acting within his authority. The druggist is obliged to retain these prescriptions or orders for a period of two years so that they may be readily accessible for inspection. It was these orders which the Commonwealth claims were altered. Appellant argues, however, that any money which was obtained by the druggist for the raised amounts was obtained upon the first and second copies of the prescription orders which went to Harrisburg. The evidence as given by Mrs. Miller was sufficient to show that all copies had been checked under her supervision and that there were no discrepancies between them. This would indicate that the two copies at Harrisburg were the same as the copies retained by the druggist and the local office of

the D.P.A. However, appellant was charged not only with defrauding the Commonwealth but he was also charged with altering the prescriptions "to the prejudice of the right of another, with intent to defraud. . . ." If the appellant altered the prescriptions so that he would have on file prescriptions for a greater amount than that actually delivered to the patients, then he would be in the possession of drugs which he could dispense without any additional prescriptions. This would defraud the doctor in that patients such as Minnie Chambers could procure drugs without an additional prescription. Furthermore, the Commonwealth and public might well be prejudiced by the sale of drugs without a doctor's prescription.

Appellant also argues that the testimony of Mrs. Miller as to the practice of checking the prescriptions by the local D.P.A., where she did not have specific knowledge as to these particular prescriptions, was in error. She testified that she did not personally compare the copies. She did testify, however, that this work was done under her supervision and that all discrepancies are brought to her attention. As we understand this testimony it means that if there had been a discrepancy in the quantity of the drug in the prescriptions retained by the druggist or the local D.P.A. and the prescriptions which were to go to Harrisburg, this would have been brought to her attention. She testified that it was not brought to her attention. It is a fair inference that all copies were the same. Even if all copies were not the same, Mrs. Miller's testimony would be harmless error because the Commonwealth's charge concerns the alteration of the orders on file with the druggist and the local D.P.A.

For the reasons hereinbefore given, it was not error for the court below to refuse to charge that, in the absence of the originals, the jury could infer that if they

had been produced they would not support the contention of the Commonwealth as to the alterations.

It is also contended that there was not sufficient evidence under the circumstantial evidence rule to submit this case to the jury. In this connection appellant relies on *Com. v. New,* 354 Pa. 188, 47 A. 2d 450. In that case Mr. Chief Justice MAXEY said: "The evidence in this case was utterly insufficient if submitted under adequate and proper instructions to convince an intelligent and fair-minded jury of the defendant's guilt to a *moral certainty* so strong as not to be weakened or disturbed by any reasonable doubt." (Emphasis added) More recently the Supreme Court of this State has criticized the use of the words "moral certainty" relied upon in the *Com. v. New* case. *Com. v. Kloiber,* 378 Pa. 412, 426, 427, 106 A. 2d 820. The rule now is: "All that is required is that, the evidence being circumstantial, the circumstances proved should be such as reasonably and naturally to justify an inference of the guilt of the accused, and of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt: . . . ." *Com. v. Nasuti,* 385 Pa. 436, 445, 123 A. 2d 435. It is not the law that the circumstantial evidence must be such as to exclude every other reasonable possibility, except that of guilt. *Com. v. Carey,* 368 Pa. 157, 163, 82 A. 2d 240. See also *Com. v. Cese,* 176 Pa. Superior Ct. 650, 654, 655, 109 A. 2d 228.

In the present case the evidence revealed that the prescriptions were only in the possession of the doctor, the patient and the druggist. The doctor and the patient testified that they did not alter the prescriptions. Their credibility was for the jury. We are of the opinion that the evidence was sufficient to go to the jury even though it was circumstantial in character.

Appellant also contends that the court erred in refusing defendant the right to cross-examine William Haushalter in regard to certain statements made by him in attempting to induce one Florence Baker to testify against the defendant. Such evidence, if strong enough, is admissible. *McHugh v. McHugh,* 186 Pa. 197, 40 A. 410; 1 Henry Pa. Evid., §53; 2 Wigmore on Evidence, 3d ed., §278, p. 120. In this case we do not think that the evidence was of the character which should have been admitted. The only evidence that could have been extracted from Haushalter was that he had agreed to pay the witness fees of Florence Baker if she would appear and testify. This he was obliged to do if he wanted to insure her presence in court. This certainly was not an attempt to bribe a witness to testify falsely. Furthermore, the Commonwealth really did not rely upon any evidence given by William Haushalter to obtain a conviction. It relied entirely upon the evidence of the doctors and patients.

Appellant argues that the court erred in refusing to allow the defendant to cross-examine Haushalter in regard to his testimony before the grand jury, where other informations against the patients were being considered at the same time as those against the appellant. There is no question but that in Pennsylvania a witness in a criminal trial who has also testified before the grand jury about the same case may be called upon at trial to state whether or not he testified differently before the grand jury. If he states that he did not, he may be confronted, in order to contradict him, by a grand juror or other person who heard him testify. *Com. v. Fotti,* 93 Pa. Superior Ct. 365, 367, 368; *Com. v. Carr,* 137 Pa. Superior Ct. 546, 558, 10 A. 2d 133. Such is not the case here. The offer of the defense was not that the prosecutor had testified any differently at the trial from what he had testified be-

fore the grand jury. There was, therefore, no attempt to contradict anything which the prosecutor said before the grand jury. Furthermore, the scope or limitation of cross-examination is largely within the discretion of the trial court and will not be reversed in the absence of an abuse thereof. *Com. v. Woods,* 366 Pa. 618, 622, 79 A. 2d 408.

We are convinced that the appellant had a fair trial and that there was ample evidence to justify his conviction on all of the indictments.

Judgment of sentence affirmed in each case and it is ordered that appellant appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with his sentence or any part thereof which had not been performed at the time the order of supersedeas was entered.