FERKO PROPERTY
(INCLUDING EXCEPTED PORTIONS
OF PROPERTY)

541 A.2d 332

**COMMONWEALTH of Pennsylvania**

v.

**Roxanne JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 26, 1987.

Filed April 20, 1988.

316

Vincent R. Baginski, Assistant Public Defender, Pittsburgh, for appellant.

Dara A. DeCourcy, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before WIEAND, McEWEN and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the judgment of sentence for first degree murder and carrying a firearm without a license. Appellant contends that (1) the suppression court erred in (a) denying her motion to suppress her statement to police on the ground that her arrest was illegal; (b) denying her motion to suppress her statement to police because it was given without benefit of *Miranda* warnings; (c) overruling her objection to a leading question; (d) admitting a carbon copy of the search warrant in violation of the best evidence rule; and (e) reopening the record to allow the admission of the original search warrant; (2) the verdict is against the weight of the evidence in light of her defense of mental illness; (3) the evidence is insufficient to support a conviction for first degree murder in light of her defense of mental illness; (4) the trial court erred in prohibiting appellant's expert witness from rendering an opinion regarding the legal definition of mental illness; (5) her sentences are illegal because they should have merged; and (6) the sentencing court, when sentencing appellant on the weapons offense, failed to state adequate reasons on the record for

its deviation from the Sentencing Guidelines. For the reasons that follow, we affirm the judgment of sentence for first degree murder, we vacate the judgment of sentence for carrying a firearm without a license and remand the case for resentencing.

On February 5, 1985, appellant was arrested and charged with homicide in relation to the killing of her former husband. Following a jury trial, appellant was found guilty of first degree murder and carrying a firearm without a license. Appellant was sentenced to a term of life imprisonment for first degree murder and a concurrent term of two-and-one-half-to-five-years imprisonment for carrying a firearm without a license. This appeal followed.

Appellant first contends that her arrest was illegal because the arresting officers were outside of their municipal jurisdiction and, therefore, the lower court erred in denying her suppression motion.[1] The Municipal Police Jurisdiction Act (Act), 42 Pa.C.S.A. §§ 8951–8954, provides that a police officer may act outside his or her primary jurisdiction in certain enumerated instances. *See Id.* § 8953. Appellant argues that the police officers' actions in this case do not fall within any of the circumstances identified by the Act. Here, at approximately 9:27 p.m. on February 5, 1985, McKeesport Police Officer Willard received a radio call regarding a possible homicide in McKeesport. Upon arriving at the victim's home, Officer Willard spoke with the victim's son, who stated "My mother shot my dad." N.T. March 14–22, 1986 at 44. Officer Willard then sent a radio dispatch to police officers in White Oak, an adjoining municipality, stating that appellant was involved in a shooting and asking them to check appellant's White Oak home. *Id.* at 46. Officer Gironda, of the White

---

1. We note at the outset that, when reviewing the denial of a suppression motion, we "will consider only the evidence of the prosecutor's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Otto*, 343 Pa. Superior Ct. 457, 459 n. 1, 495 A.2d 554, 555 n. 1 (1985) (quoting *Commonwealth v. Brown*, 473 Pa. 562, 566, 375 A.2d 1260, 1262 (1977)).

Oak Police Department, received the radio dispatch and proceeded to appellant's home. *Id.* at 22. Upon discovering that appellant was home, Officer Gironda parked his car outside her home and requested assistance from the McKeesport and White Oak Police Departments. *Id.* at 23. Officers Willard and Tirpak of McKeesport, as well as two White Oak police officers, arrived on the scene. Officers Gironda, Willard, and Tirpak approached appellant's house and asked her to come outside. *Id.* at 24–25. When appellant came outside, Officer Gironda put handcuffs on her. *Id.* at 47. Officer Gironda then read the *Miranda* warnings to appellant. *Id.* at 26. Officer Gironda testified that he could not remember which officer actually told appellant she was under arrest. *Id.* at 34. White Oak police officers then placed appellant in a White Oak police car and transported her to the McKeesport police station. *Id.* at 54. Although McKeesport police officers were present at the time of appellant's arrest in White Oak, we conclude that appellant effectively was arrested by Officer Gironda, and under authority of the White Oak Police Department. Thus, the Municipal Police Jurisdiction Act does not apply. Accordingly, the suppression court did not err in concluding that appellant's arrest was lawful.[2]

Appellant next contends that the suppression court erred in denying her motion to suppress her post-arrest statement to police because it was given without the benefit of *Miranda* warnings. A person must be informed of his or her *Miranda* rights prior to custodial interrogation by police. *Commonwealth v. Sites,* 427 Pa. 486, 490, 235 A.2d 387, 389 (1967). Custodial interrogation is defined as "questioning *initiated* by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." *Id.,* 427 Pa.

---

2. Moreover, we note that even if we were to conclude that appellant was illegally arrested by McKeesport police officers, appellant would not necessarily be entitled to the suppression of the fruits of her arrest. *See Commonwealth v. Peppers,* 357 Pa. Superior Ct. 270, 273, 515 A.2d 971, 973 (1986) (suppression not appropriate remedy for invalid arrest under Municipal Police Jurisdiction Act).

at 492, 235 A.2d at 390 (emphasis supplied) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). " 'Interrogation' is police conduct 'calculated to, expected to, or likely to evoke admission.' " *Commonwealth v. Brantner*, 486 Pa. 518, 527, 406 A.2d 1011, 1016 (1979) (quoting *Commonwealth v. Simala*, 434 Pa. 219, 226, 252 A.2d 575, 578 (1969)). When an inculpatory statement is not made in response to interrogation by police officers, however, "the statement is classified as a volunteered statement, gratuitous and not subject to suppression for lack of warnings." *Commonwealth v. Whitley*, 500 Pa. 442, 445, 457 A.2d 507, 508 (1983) (citations omitted).

█ Here, it is uncontested that appellant was in custody at the time she made an inculpatory statement to the police. The record reveals, however, that the statement was not the result of an interrogation by the police. At the suppression hearing, Officer Gironda testified that after appellant was placed under arrest, he began to advise her of her *Miranda* rights. N.T. May 14–22, 1986 at 26. Appellant interrupted him several times while he attempted to inform her of her rights. *Id.* Officer Gironda further testified as follows:

Q. When she interrupted you, what did she say? Use whatever language she said.

A. She said, "Are you in on this fucking thing?" I said, "Roxie, I have got a job to do." And she looked at me, and she said, "I had a job to do, and I did it tonight."

*Id.* at 27–28. Officers Willard and Tirpak then finished advising appellant of her rights. *Id.* We cannot conclude that Officer Gironda's response to appellant's question, particularly in light of her continued interruptions, was conduct designed to evoke an admission. *See Commonwealth v. Brantner, supra* (admission made in response too "Hi, Harry. Apparently we have a little problem, and I need to take your photograph." was not result of interrogation). Thus, for *Miranda* purposes, appellant's statement was volunteered and need not be suppressed simply because

it was made before the police could finish giving her the *Miranda* warnings. Accordingly, we conclude that the suppression court correctly denied appellant's suppression motion on this ground.

■ Appellant next contends that the suppression court erred in overruling her objection to a leading question. It is well-established that the allowance of leading questions lies within the discretion of the trial court and a court's tolerance or intolerance of leading questions will not be reversed absent an abuse of discretion. *See, e.g., Commonwealth v. Beasley,* 504 Pa. 485, 495, 475 A.2d 730, 735 (1984); *Commonwealth v. Bell,* 328 Pa. Superior Ct. 35, 51, 476 A.2d 439, 448 (1984). "A leading question has been defined as one which puts the desired answer in the mouth of the witness." *Commonwealth v. Dreibelbis,* 493 Pa. 466, 476, 426 A.2d 1111, 1116 (1981).

■ Here, appellant objects to the following question posed by the district attorney to Officer Willard:

Q. Were you present at the time that [appellant] said to Gironda, "Are you in on this fucking thing, too, Gironda?"

MR. BAGINSKI [attorney for appellant]: Object to that as being leading.

THE COURT: Overruled.

MR. BAGINSKI: We don't even know if the witness even heard it.

THE COURT: Overruled.

N.T. May 14–22, 1986 at 48. Because the question objected to by appellant could be answered with either a "yes" or "no" response, it is not of the type designed to put the desired answer in the mouth of the witness. We conclude, therefore, that this question was not leading. Moreover, appellant was not prejudiced by this question because the fact that appellant made that statement to Officer Gironda, and the substance of the statement had already been introduced into evidence. *See Id.* at 28. Thus, the suppression court did not abuse its discretion in overruling appellant's objection to this question.

■ Appellant next contends that the suppression court erred in admitting into evidence a copy of the original search warrant in violation of the best evidence rule. The best evidence rule requires that, "to prove the contents of a writing, the original writing must be produced, unless a sufficient reason for not producing it is shown." *Commonwealth v. Byers*, 320 Pa. Superior Ct. 223, 227, 467 A.2d 9, 11 (1983). A copy of the original document may be admitted if it is shown that the original is not available and that the copy conforms to the contents of the original. *Commonwealth v. Olitsky*, 184 Pa. Superior Ct. 144, 154, 133 A.2d 238, 243 (1957).

> The rule which excludes evidence of copies of documents where the documents themselves are available as proof does not apply to documents and writings which are executed in duplicate or multiplicate form. It is well settled that where a writing is executed in duplicate or multiplicate, each of the parts is the writing which is to be proved, because, by the act of the parties, each is made as much the legal act as the other. Each part so executed is regarded as the primary evidence of its contents, and the original need not be produced.

*Id.*, 184 Pa.Superior Ct. at 154–55, 133 A.2d at 244. *See also Evolo Liquor License Case*, 204 Pa. Superior Ct. 225, 227, 203 A.2d 332, 333 (1964) (copy of search warrant considered best evidence as duplicate original because made by same process as original).

■ Here, at the suppression hearing, the Commonwealth introduced into evidence the server's copy of the search warrant. N.T. May 14–22, 1986 at 68. The server's copy was a carbon copy of the original search warrant that was produced at the same time as the original. *Id.* at 69, 71. The detective who prepared the search warrant testified that the warrant was produced in multiplicate. *Id.* at 71. After the warrant was executed, the original was returned to the District Magistrate who issued the warrant. *Id.* at 70. The server's copy that was contained in the file was signed by both the affiant and the Magistrate and was

sealed. *Id.* at 71. We conclude, therefore, that the server's copy was a duplicate original of the search warrant and the original search warrant need not be produced. Accordingly, the admission of the server's copy of the search warrant did not violate the best evidence rule.

 Appellant next contends that the suppression court erred in reopening the record to admit into evidence the original search warrant. Because we conclude that the suppression court properly admitted the duplicate original of the search warrant, there was no prejudice to appellant in admitting the original search warrant into evidence. Moreover, appellant has failed to allege any inconsistencies between the original and duplicate original from which we could infer prejudice to appellant. Accordingly, the suppression court did not err in reopening the record to admit the original search warrant.

 Appellant next contends that the evidence was insufficient to support the verdict and the verdict was against the weight of the evidence in light of testimony regarding her defense of mental illness.[3] Appellant argues that her mental illness at the time of the offense negated an element of the crime of first degree murder, i.e., specific intent. It is settled law that the test for evaluating the sufficiency of the evidence in a criminal case is whether, viewing the evidence in the light most favorable to the

3. The lower court and the Commonwealth state that this issue is waived because appellant attempted to raise it in boiler-plate post-verdict motions. After filing post-verdict motions, appellant requested leave to file amended post-verdict motions within ten days of receipt of the pre-trial and trial transcripts. The trial court granted this request. *See* Order, May 30, 1986. Appellant timely filed amended post-verdict motions, which alleged the following:

16. Defendant avers that the verdict was contrary to the law, specifically in regard to mental illness.

17. Defendant avers that the verdict was contrary to the weight and sufficiency of the evidence, specifically in regard to the evidence of mental illness.

Amended Motion for a New Trial and/or Arrest of Judgment at 3. We conclude that these statements, which refer specifically to an issue central to appellant's defense at trial, are sufficient to preserve the issues for appellate review.

Commonwealth as the verdict winner and drawing all reasonable inferences therefrom upon which the fact finder could properly have based its verdict, there is sufficient evidence to enable the trier of fact to find beyond a reasonable doubt every element of the crime of which appellant has been convicted. *Commonwealth v. Davis*, 491 Pa. 363, 369, 421 A.2d 179, 182 (1980). When reviewing a claim that the verdict is against the weight of the evidence, we will grant a new trial only when the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Miller*, 303 Pa. Superior Ct. 504, 509, 450 A.2d 40, 42 (1982). First degree murder is defined as follows:

A criminal homicide constitutes a murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S.A. § 2502(a). "Intentional killing" is defined as:

Killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing.

*Id.* § 2502(d).

The Crimes Code provides that a person who raises a defense of insanity may be found "guilty but mentally ill" if "the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense." 18 Pa.C.S.A. § 314(a). "Mentally ill" is defined as "One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." *Id.* § 314(c)(1). Once there is sufficient evidence to raise the issue of insanity, the burden is on the Commonwealth to prove the defendant's sanity beyond a reasonable doubt. *Commonwealth v. Ruth*, 309 Pa. Superior Ct. 458, 462, 455 A.2d 700, 702 (1983). Although psychiatric testimony is of probative value in determining a defendant's mental capacity, it is within the province of the jury to determine the credibility and weight of such evidence. *Id.* Moreover, the law does not require that we conclude that an appellant's mental state is perfectly sound or that he or she

acted with a completely free will in order to sustain a conviction of first degree murder. *Commonwealth v. Cain*, 349 Pa. Superior Ct. 500, 524, 503 A.2d 959, 971 (1986). "The factfinder need not ... conclude that appellant lacked the substantial capacity to conform his [or her] conduct to the requirements of the law merely because he [or she] failed to abide by it." *Id.*, 349 Pa.Superior Ct. at 523, 503 A.2d at 971.

Here, Dr. Robert Wettstein, a psychiatrist, testified for the defense regarding appellant's mental capacity. After interviewing appellant and her family and reviewing her records, he diagnosed appellant as having a "paranoid disorder." N.T. May 14–22, 1986 at 390. Dr. Wettstein defined paranoid disorder as a serious mental condition "which some people refer to as a psychosis or a substantial difficulty in telling reality from fantasy." *Id.* In Dr. Wettstein's opinion, appellant began suffering from this disorder in 1982 and he testified that the disorder manifested itself in appellant as a belief that people were trying to kill her. *Id.* at 390–91. He further testified that appellant was involuntarily committed to a hospital for several days in August 1983 and again in November 1983. *Id.* at 394, 396. Dr. Wettstein then gave his opinion that appellant "had such a mental disease that she lacks substantial capacity to conform her conduct to the requirements of the law." *Id.* at 414.

On cross-examination, the prosecutor questioned Dr. Wettstein regarding appellant's records from her prior hospital commitments. He was questioned regarding a report prepared by Dr. Bowman of the Behavior Clinic, who examined appellant in May 1984. *Id.* at 444–45. Dr. Bowman had concluded that appellant was hostile and agitated but "had a good grasp of her current situation, was alert and oriented" and "there was no indication of hallucinations, delusions, or thought disorder." *Id.* Appellant was diagnosed by Dr. Bowman as having an adjustment reaction and an "adjustment disorder of adult life." *Id.* at 445. Dr. Wettstein acknowledged that neither of these disorders is a mental illness. *Id.* Dr. Wettstein was also questioned

regarding a report prepared by Dr. Christine Martrone of the Behavior Clinic, who examined appellant two days after the killing. *Id.* at 446–48. Dr. Martrone diagnosed appellant as having a personality disorder, mixed type. *Id.* at 447. Dr. Wettstein explained that his diagnosis differed from that of Dr. Martrone because he had more information regarding appellant's condition. *Id.* at 447–48. Dr. Wettstein further testified as follows:

Q. [by assistant district attorney]: Are you suggesting in any way that the defendant in this case could not understand the nature and quality of the acts she was doing that night when she pulled that trigger?

A. I don't have any opinion about that.

Q. You cannot in fact say she did not understand that; is that correct?

A. She could not or could.

Q. Are you telling this jury that if the defendant did not know what she was doing when she pulled that trigger that she did not know what she was doing was wrong?

Are you telling the jury your opinion as to that?

A. I have no opinion about that, either.

*Id.* at 425–26.

Thus, through the testimony of appellant's expert alone, the jury was presented with conflicting evidence regarding whether appellant was suffering from a mental illness at the time the offense was committed. It therefore was within the province of the jury to determine the weight and credibility of this evidence. *See Commonwealth v. Ruth, supra. See also Commonwealth v. Eckert,* 244 Pa. Superior Ct. 424, 429, 368 A.2d 794, 797 (1976) (absent abuse of discretion, it is province of trier of fact to believe all, some, or none of evidence). Although there was testimony that would support a conclusion that appellant was "mentally ill," as that term is defined in the Code, at the time of the offense, there was also evidence from which the jury could have concluded that appellant had the capacity to conform her conduct to the requirements of the law. *See Commonwealth v. Cain, supra.* Accordingly, we conclude that

there was sufficient evidence to allow the jury to find that appellant was not mentally ill at the time of the killing and, therefore, that the killing was willful, deliberate, and premeditated. Moreover, in light of the various opinions of the experts, the verdict of first degree murder is not so contrary to the evidence as to shock one's sense of justice.

■ Appellant next contends that the trial court erred in prohibiting her expert witness, Dr. Wettstein, from testifying regarding the legal definition of mental illness. At trial, Dr. Wettstein testified as follows:

Q. Is there any other words that are sometimes used within the context of mentally ill?

A. From a psychiatric standpoint, by the use of mental disorder, mental disease, or mental defect, from the standpoint that the law to my mind meets the criteria for mental illness.

MR. NESCOTT [assistant district attorney]: Objection. That is a question for the jury as to the law.

THE COURT: Sustained. It will be stricken. *The jury is to disregard the interpretation of the law as rendered by the doctor.*

N.T. May 14–22, 1986 at 415. "The question whether a witness is qualified to testify as an 'expert' is within the sound discretion of the trial court and will not be overturned except in clear cases of abuse." *Commonwealth v. Gross*, 307 Pa. Superior Ct. 353, 357, 453 A.2d 620, 622 (1982). An expert witness may testify as to his or her opinion on matters that are within his or her scientific area or expertise. *Id.*

■ Here, Dr. Wettstein, a psychiatrist, was qualified to express his opinion within his scientific knowledge or experience as a medical doctor. He was not qualified, however, to testify regarding the law or whether his definition of mental illness was the same as the legal definition of mental illness. Accordingly, the trial court did not abuse its discretion when it sustained the Commonwealth's objection to his expression of an opinion as to the law. Moreover, Dr. Wettstein had earlier rendered an opinion that appellant

"had such a mental disease that she lacks substantial capacity to conform her conduct to the requirements of the law." N.T. May 14–22, 1986 at 414. Thus, even if the court erred in sustaining the objection, appellant was not prejudiced by the court's ruling, because appellant's expert already had reiterated the legal definition of mental illness.

■ Appellant next contends that her sentence for carrying a firearm without a license should merge with her sentence for first degree murder. We disagree. The Crimes Code provides as follows:

> If any person shall commit or attempt to commit a crime of violence when armed with a firearm contrary to the provisions of this subchapter, he [or she] may, *in addition to the punishment provided for the crime, be punished also as provided by this subchapter.*

18 Pa.C.S.A. § 6103 (emphasis added). *See also Commonwealth v. Flynn*, 314 Pa. Superior Ct. 162, 170 n. 9, 460 A.2d 816, 820 n. 9 (1983) (sentence for firearms violation will not merge with sentence for crime of violence).

Here, appellant was sentenced to a term of life imprisonment for first degree murder and to a concurrent term of two-and-one-half-to-five-years imprisonment for carrying a firearm without a license. Under § 6103, appellant could be properly sentenced for both the firearms violation and the underlying crime of violence. Accordingly, we conclude that her convictions should not merge for sentencing purposes.

■ Appellant last contends that the sentencing court failed to state adequate reasons on the record for deviating from the Sentencing Guidelines with regard to her sentence for carrying a firearm without a license. Appellant's brief contains a concise statement of the reasons relied upon for allowance of appeal with regard to this issue, as required by Pa.R.A.P. 2119(f) and *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). The Sentencing Code, 42 Pa.C.S.A. §§ 9701–9781, provides, *inter alia,* that:

> In *every* case in which the court imposes a sentence for a felony or misdemeanor, the court *shall* make as part of

the record, and disclose in open court at the time of sentencing, *a statement of the reason or reasons for the sentence imposed.*

*Id.* § 9721(b) (emphasis added). Such a statement is mandatory.[4] *Commonwealth v. Riggins,* 474 Pa. 115, 129, 377 A.2d 140, 148 (1977); *Commonwealth v. Terrizzi,* 348 Pa. Superior Ct. 607, 609, 502 A.2d 711, 712 (1985). The failure to provide such a statement of reasons for the sentence imposed is reversible error requiring resentencing. *Id.; Commonwealth v. McCall,* 320 Pa.Superior Ct. 473, 482, 467 A.2d 631, 635 (1983). In addition, when the court sentences outside the Guidelines, there must be a contemporaneous written statement of the reasons for the deviation from the Guidelines. *Commonwealth v. Royer,* 328 Pa. Superior Ct. 60, 70, 476 A.2d 453, 458 (1984). Failure to provide such a statement is grounds for vacating the sentence and remanding for resentencing. *Id.*

■ Here, appellant had a prior record score of zero (0). The offense gravity score for carrying a firearm without a license is six (6). Thus, under the Sentencing Guidelines, Pa.Code §§ 303.1–303.9, *reprinted following* 42 Pa.C.S.A. § 9721, the possible range of sentences for this offense is as follows:

| mitigated range | minimum range | aggravated range |
|-----------------|---------------|------------------|
| 2–4 mos. | 4–12 mos. | 12–18 mos. |

Appellant's sentence of two-and-one-half-to-five-years imprisonment, therefore, clearly exceeded the sentences recommended by the Sentencing Guidelines. The sentencing transcript, however, is devoid of *any* reasons for the sentence imposed. Indeed, in addition to not consulting the Guidelines, a review of the record demonstrates that the

4. We note that because of the mandatory nature of the statutory allocution rule, appellant's brief presents a substantial question for our review, as required by 42 Pa.C.S.A. § 9781(b). Moreover, appellant has neither raised nor preserved the issue of the constitutionality of the Sentencing Guidelines, and therefore *Commonwealth v. Sessoms,* 516 Pa. 365, 532 A.2d 775 (1987) does not apply.

sentencing court failed to consider any of the relevant *statutory* factors, including appellant's character and background, in formulating appellant's sentence. In addition, although appellant raised this issue in her Motion to Reduce and/or Modify Sentence, the lower court failed to address the issue in its opinion.[5] Because the sentencing court failed to state its reasons for its deviation from the Sentencing Guidelines and for the sentence it imposed, we vacate the judgment of sentence for carrying a firearm without a license and remand the case for resentencing consistent with this memorandum.

For the above-stated reasons, we affirm the judgment of sentence for first degree murder, vacate the judgment of sentence for carrying a firearm without a license, and remand for resentencing on the weapons charge.

Judgment of sentence for murder affirmed. Judgment of sentence for carrying a firearm without a license vacated and remanded. Jurisdiction is relinquished.

---

**5.** We note, however, that "[a] statement by a sentencing court in its opinion that it considered all of the appropriate factors does not cure its failure to do so during sentencing." *Commonwealth v. Peters,* 358 Pa.Superior Ct. 94, 97, 516 A.2d 1197, 1199 (1986).