J. A09003/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
ELIEZER ALMANZAR, : No. 1049 MDA 2015
:
Appellant :


Appeal from the Judgment of Sentence, December 29, 2014,
in the Court of Common Pleas of York County
Criminal Division at No. CP-67-CR-0000294-2014


BEFORE: FORD ELLIOTT, P.J.E., JENKINS AND PLATT,* JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JULY 20, 2016**

Eliezer Almanzar appeals from the judgment of sentence entered on

December 29, 2014, after a jury convicted him of one count of involuntary

deviate sexual intercourse with a child[1] ("IDSI"), one count of aggravated

indecent assault of a child,[2] and one count of corruption of minors.[3] The trial

court sentenced appellant to a term of incarceration of 6 to 12 years on the

IDSI count, which merged with the aggravated indecent assault count, and

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3123(b).

[2] 18 Pa.C.S.A. § 3125(b).

[3] 18 Pa.C.S.A. § 6301(a)(1)(ii).

to a concurrent 5-year term of incarceration on the corruption of minors count. We affirm.

The record reflects that appellant's convictions stem from an incident involving the 4-year-old daughter of appellant's then-girlfriend. The incident occurred on September 7, 2013. On that day, appellant had made arrangements with the victim's mother to pick the victim up at her babysitter's home, take her out to eat, and take her to a movie. (Notes of testimony, 9/9-11/14 at 159.) After appellant picked the victim up, he took her to his home, claiming that he needed to get money and his phone charger. (*Id.* at 159.) While at his residence, appellant took the victim to his bedroom, removed her pants and underwear, and licked her vagina. (*Id.* at 84-93.) Afterwards, appellant instructed the victim that she should not tell her mother. (*Id.* at 86.) He then took the victim to McDonald's for a Happy Meal and then to an ice cream shop. (*Id.* at 85-86.) The next day, the victim told her mother that appellant had licked her private part. (*Id.* at 86, 100.) The victim's mother immediately called police and took the victim to a hospital emergency room. (*Id.* at 101.)

The trial court set forth the following procedural history:

> On March 21, 2014, [appellant] filed an Omnibus Pretrial Motion. The Commonwealth lodged a response on June 24, 2014. The Commonwealth then filed Commonwealth's Motion to Allow Testimony of Out-of-Court Statements Made by Child Victims Pursuant to 42 Pa.C.S.A. § 5985.1, on June 27, [2014]. Following a hearing on August 22, 2014, we denied the suppression of Appellant's

confession, which had been challenged in Appellant's Omnibus. And on August 29, 2014, at the conclusion of a hearing, this Court granted the Commonwealth's tender years exception.

On September 11, 2014, a jury of the Appellant's peers found him guilty of [IDSI], Aggravated Indecent Assault of a Child, and Corruption of Minors. We raised the issue of merging counts and then set it aside to be dealt with at the time of sentencing. On September 22, 2014, the Appellant filed a Motion for Arrest of Judgment/Motion for Acquittal.[Footnote 2] Thereafter, the Appellant filed a Motion for Extraordinary [R]elief, which was docketed on December 19, 2014, that challenged [the] Commonwealth for having invoked a mandatory minimum. [The] Commonwealth filed a response on December 26, 2014; however, at sentencing, on December 29, 2014, the Commonwealth dropped the mandatory minimum because new case law convinced them that it was unconstitutional. We then proceeded to sentence the Appellant to six to twelve years for the [IDSI] and a concurrent term of five years for Corruption of Minors. We merged the Indecent Assault charge with the [IDSI] charge.

> [Footnote 2] This motion stated that counsel was gathering more information for this motion. We do not see in the record that we disposed of the motion; however, nor do we see that defense counsel submitted any further information upon which the motion was to be based. Rather, we believe the motion was dealt with through timely post-sentence motions.

On January 8, 2015, the Appellant filed post-sentence motions. As a result of the motions being undecided within one hundred and twenty days of filing, they were denied as a matter of law in accordance with Rule 720 of the Rules of Criminal Procedure. Counsel for the Appellant then filed an

appeal with the Superior Court [which] ordered him to file the Appellant's Praecipe for Entry of Order Denying Post-Sentence Motions by Operation of Law, which counsel did on July 21, 2015. We signed a related order on July 28, 2015.

On June 17, 2015, this Court received a Notice of Appeal. On July 1, 2015, pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, we ordered the Appellant to file a statement of matters complained of. That statement was docketed on July 21, 2015.

Trial court opinion, 10/28/15[4] at 1-3 (footnote 1 omitted).

Appellant raises the following issues for our review:

> I. Whether the [T]rial Court erred by not granting the Appellant's [Judgment] of Acquittal as the Commonwealth failed to prove in their case that there was penetration which was a necessary element to support the charge of [] IDSI?
>
> II. Whether the Trial Court erred by not granting the Appellant's Suppression Motion with respect to statements made to the police at the time of his interview as said statements were provided under a coercive environment and the Court's failure to do so prejudiced the Appellant at the time of trial?

Appellant's brief at 6.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute

---

[4] We note that the trial court's opinion is dated October 27, 2015, but was filed on October 28, 2015.

our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Pappas*, 845 A.2d 829, 835-836 (Pa.Super. 2004) (citation omitted).

The Crimes Code defines IDSI as follows: "A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3123(b). The Crimes Code defines deviate sexual intercourse, in relevant part, as "[s]exual intercourse per os or anus between human beings." 18 Pa.C.S.A. § 3101. The Crimes Code defines sexual intercourse, in relevant part as, "[i]n addition to its ordinary meaning, [it] includes intercourse per os or per anus, with some penetration however slight." *Id.* This court has held that "any involuntary contact by the mouth, including the tongue as well as the lips, [with the sexual organ of another person] . . . meet[s] the test of

involuntary deviate sexual intercourse." ***Commonwealth v. L.N.***, 787 A.2d 1064, 1071 (Pa.Super. 2001), ***appeal denied***, 800 A.2d 931 (Pa. 2002). ***See also In the Interest of J.R.***, 648 A.2d 28 (Pa.Super. 1994), ***appeal denied***, 655 A.2d 515 (Pa. 1995) (stating that "[d]eviate sexual intercourse is considered to have occurred if one's mouth or tongue penetrates the vaginal area of another"); ***see also Commonwealth v. McIlvaine***, 560 A.2d 155 (Pa.Super. 1989), ***reversed on other grounds***, 603 A.2d 1021 (Pa. 1992) (holding that where victim was forced to kiss defendant's penis, testimony was sufficiently descriptive to warrant the inference by the jury that defendant penetrated, "however, slight," the victim's mouth).

Here, appellant complains that there was insufficient evidence to convict him of IDSI because the victim did not testify at trial that appellant penetrated her. Appellant goes on to complain that the trial court somehow erred in admitting the victim's videotaped Children's Advocacy Center ("CAC") interview, despite appellant stipulating to its admission. Appellant argues that but for the admission of that videotape, which, again, appellant stipulated to, there would have been no evidence of penetration sufficient to convict appellant of IDSI because the victim did not testify at trial that appellant penetrated her. Appellant further complains that because he was not present at the CAC interview, he was unable to cross-examine the victim with respect to penetration. Appellant is mistaken.

The record reflects that the victim testified as follows:

Q. Okay. What did he do after he pulled down your pants?

A. Licked me.

Q. He licked you?

A. (Nodded head affirmatively.)

Q. Okay. Where did he lick you?

A. Down where he pulled down my pants.

Q. And what do you call the part that he licked?

A. My private.

Notes of testimony, 9/9-11/14 at 83-84. The Commonwealth then showed the victim a drawing of a naked female and requested her to circle the part of the female's body that appellant licked. (***Id.*** at 84-85.) The victim circled the female genitalia. (***Id.*** at 85; ***see also*** Commonwealth Exhibit 1.)

Clearly, the record reflects that the Commonwealth produced evidence that there was oral contact with appellant's mouth and the victim's genitalia. That evidence was sufficient to establish penetration however slight in order to convict appellant of IDSI.

To the extent that the victim's trial testimony contradicted what she said during the CAC interview, such contradictions were to be resolved by the fact-finder, which, in this case, was a jury of appellant's peers. It is not our role to usurp the fact-finder's function, and we will not do so. Finally, because appellant cross-examined the victim at trial, the record belies his

complaint that he had no opportunity to cross-examine the victim with respect to penetration. Therefore, appellant's first claim lacks merit.

Appellant's second and final complaint is that the trial court erred in denying his motion to suppress appellant's confession.

Our standard of review for challenges to the denial of a suppression motion is as follows:

> [We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. McAdoo***, 46 A.3d 781, 783-784 (Pa.Super. 2012), ***appeal denied***, 65 A.3d 413 (Pa. 2013) (citations omitted).

Here, appellant specifically complains that because he was subject to a custodial interrogation and was not given his **Miranda**[5] warnings, the trial court erred in denying his suppression motion.

> "Police detentions in Pennsylvania become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest." **Commonwealth v. Ellis**, 549 A.2d 1323, 1332 (Pa.Super. 1988) (**citing California v. Beheler**, 463 U.S. 1121, (1983)). "Interrogation is police conduct calculated to, expected to or likely to evoke admission." **Commonwealth v. Johnson**, 541 A.2d 332, 336 (Pa.Super. 1988) (citation and quotations omitted). The overlying test to determine whether a person is being subjected to a custodial interrogation necessitating **Miranda** warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation. **See Commonwealth v. Chacko**, 459 A.2d 311, 314 (Pa. 1983). "The standard for determining whether police have initiated a custodial interrogation or an arrest is an objective one, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the troopers or the person being seized." **Commonwealth v. Edmiston**, 634 A.2d 1078, 1085-86 (Pa. 1993). The factors that the court considers to determine whether there has been a custodial interrogation include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. **See Commonwealth v. Peters**, 642 A.2d 1126, 1130 (Pa.Super. 1994) (**en banc**).

---

[5] **Miranda v. Arizona**, 384 U.S. 436 (1966).

> Police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to become the functional equivalent of an arrest. ***See Ellis***, 549 A.2d at 1332. "Arrest is an act that indicates an intention to take a person into custody or that subjects the person to the will and control of the person making the arrest." ***Commonwealth v. Gwynn***, 723 A.2d 143, 148 (Pa. 1998).

***Commonwealth v. Turner***, 772 A.2d 970, 974 (Pa.Super. 2001).

We must first determine whether, under the totality of the circumstances, the detention became so coercive as to constitute the functional equivalent of arrest and, consequently, necessitate the provision of ***Miranda*** warnings.

The record reflects that Detective Kyle Hower of the York County Police Department contacted appellant and asked him if he would be willing to speak with the detective. (Notes of testimony, 6/26/14 at 18.) The two then made arrangements for the interview. (***Id.***) Appellant arrived at the police department voluntarily. (***Id.***) Because appellant made his own transportation arrangements, nothing in the record indicates that appellant was transported to the police department against his will. (***Id.***)

In addition to Detective Hower, Amy Abel, of Children & Youth, was present. (***Id.*** at 7, 18.) The interview lasted approximately one hour. (***Id.*** at 12.) Nothing in the record indicates that restraints were used. Detective Hower told appellant that appellant was free to leave at any time and that he was not under arrest. (***Id.*** at 11-12.) The door to the interview

room remained unlocked during the interview. (*Id.* at 11.) Appellant never asked to leave the interview. (*Id.* at 9, 16). Appellant never tried to leave the interview. (*Id.* at 10, 16.) Detective Hower provided appellant with water. (*Id.* at 19.) Nothing in the record indicates that Detective Hower showed, threatened, or used force during the interview. Detective Hower testified that he used the investigative method of moving his chair closer to appellant in order to establish rapport. (*Id.* at 18-19.) Appellant did not shy away from the detective when he moved closer to appellant. (*Id.* at 20.) At the conclusion of the interview, appellant left the department. (*Id.* at 10.)

Under the totality of the circumstances, the detention was not custodial because nothing in the record indicates that appellant was physically deprived of his freedom in any significant way or placed in a situation where he would reasonably believe his freedom of action or movement was restricted. Consequently, appellant was not entitled to *Miranda* warnings.

We must next determine whether appellant's confession was voluntary.

> Voluntariness is determined from the totality of the circumstances surrounding the confession. The question of voluntariness is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. The

> Commonwealth has the burden of proving by a preponderance of the evidence that the defendant confessed voluntarily.

*Commonwealth v. Ogrod*, 839 A.2d 294, 320 (Pa. 2003) (citation omitted).

Here, the Commonwealth met its burden. Under the totality of the circumstances as set forth above, nothing in the record suggests that the confession was the product of manipulation or coercion. Rather, appellant arrived at the interview freely and voluntarily, and appellant confessed freely and voluntarily. Therefore, this claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2016