589 A.2d 737

**COMMONWEALTH of Pennsylvania**

v.

**Kenneth William HOFFMAN, Appellant.**

Superior Court of Pennsylvania.

Argued March 20, 1991.

Filed April 18, 1991.

532

Vincent J. Quinn, Chief Public Defender, Lancaster, for appellant.

James J. Karl, Asst. Dist. Atty., Lancaster, for Com.

Before CIRILLO, OLSZEWSKI and CERCONE, JJ.

OLSZEWSKI, Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Lancaster County on July 24, 1990. On April 7, 1989, appellant was charged with possession with intent to deliver cocaine and marijuana in violation of the Controlled Substance, Drug, Device and Cosmetic Act.[1] Appellant proceeded to a non-jury trial and was found guilty of possession with intent to deliver cocaine and possession of marijuana. The facts of this case, as summarized by the trial court, are as follows:

... On April 7, 1989, at approximately 6:40 o'clock P.M., Troopers Craig H. Wolf and John Evanco and Detectives Clyde Brown and Joyce Blatt of the Lancaster County Drug Task Force (hereafter "Task Force"), as well as police officers from Pequea Township, executed a search warrant at a farmhouse situated at 61–A Herrsville Road, Pequea Township, Lancaster County, Pennsylvania, the residence of Henry Troupe. (N.S.H. pp. 4–6, 24, 36). The farmhouse is owned by an adjoining property owner and leased to Mr. Troupe. (N.S.H. pp. 33–34).

At approximately 6:55 o'clock P.M., Trooper Wolf observed through the kitchen window a gray 1988 Chevrolet automobile arrive at the farmhouse and driven by Defendant. (N.S.H. pp. 6–7, 17). The automobile was reg-

---

1. Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 1, as amended; 35 P.S. 780–113(a)(30), supplement.

istered to a David Faul. (N.S.H. pp. 33). Defendant had been the target of numerous police investigations. (N.S.H. p. 33). Trooper Wolf recognized Defendant, knew that he had formerly resided at that address and that he had recently moved. (N.S.H. pp. 5, 16, 17, 20, 21). Defendant parked the automobile approximately thirty to fifty feet from the farmhouse in a grassy area between the farmhouse and a driveway which services the farmhouse and the landlord's adjoining property. (N.S.H. pp. 6, 22, 33–34). The property upon which Defendant parked is part of the Troupe leasehold and is used by the occupants and visitors of the Troupe residence for parking. (N.S.H. pp. 6, 29–30, 33–34).

Defendant and an unidentified white female exited the automobile, approached the Troupe residence and knocked on the front door. (N.S.H. p. 7, 24). Trooper Wolf opened the front door, grabbed Defendant by the arm and brought him into the residence. (N.S.H. pp. 7, 15–16, 24, 30). Trooper Wolf told Defendant that police officers were executing a search warrant for the residence. (N.S.H. pp. 7, 15). Trooper Wolf took Defendant to the kitchen and conducted a pat down search of Defendant's person which produced no weapons. (N.S.H. pp. 7, 24–25, 30).

Trooper Wolf immediately turned Defendant over to the custody of Trooper Evanco, exited the residence and approached the gray 1988 Chevrolet. (N.S.H. pp. 7–8, 24–25, 30). Through the passenger window, Trooper Wolf observed an open box on the console area between the two front seats and a waterpipe or "bong" protruding from the inside box. (N.S.H. pp. 8–9, Commonwealth Exhibit S.H. No. 1). Based on his twenty-one years of experience in drug law enforcement, Trooper Wolf concluded that the waterpipe was used to ingest controlled substances. (N.S.H. pp. 8–9).

Trooper Wolf unsuccessfully attempted to open the locked automobile door. (N.S.H. p. 9). Trooper Wolf entered the residence and, in the presence of Trooper

Evanco, asked Defendant for keys to the automobile. (N.S.H. pp. 9, 32). The keys were lying on the kitchen counter. (N.S.H. pp. 27, 32). Defendant showed Trooper Wolf which keys opened the automobile and handed them to Trooper Wolf. (N.S.H. pp. 9, 27, 32). Trooper Wolf exited the residence, unlocked the automobile door and conducted a full search of the passenger compartment and trunk. (N.S.H. p. 10).

The vehicle search produced the following evidence: the aforementioned waterpipe or "bong" (N.S.H. p. 10, Commonwealth Exhibit S.H. No. 1); a man's green army style field jacket found on the console between the two front seats (N.S.H. pp. 9, 10, 23, Commonwealth Exhibit S.H. No. 2); a shotgun ammunition box found inside the right front jacket pocket containing cocaine (N.S.H. p. 11, N.T. p. 59, Commonwealth Exhibit S.H. No. 3); five plastic bags found inside the right front jacket pocket containing 27.3 grams of marijuana (N.S.H. p. 11, N.T. p. 59, Commonwealth Exhibit S.H. No. 4); two small plastic "Tupperware" containers found inside the left front jacket pocket containing cocaine having a street value of approximately three thousand eight hundred dollars ($3,800.00) if sold by the ounce or ten thousand, five hundred dollars ($10,500.00) if sold by the gram (N.S.H. p. 11, N.T. pp. 60, 62, 65, Commonwealth Exhibit S.H. Nos. 5, 6); a small notebook and an address book found inside the breast jacket pocket (N.S.H. p. 12, Commonwealth Exhibit S.H. Nos. 7, 8).

While Trooper Wolf was outside the residence, Trooper Evanco conducted a full search of Defendant's person in the kitchen of the residence. (N.S.H. p. 25). The search produced the following evidence: a small black knife taken from Defendant's right front pants pocket (N.S.H. pp. 25, 26, Commonwealth Exhibit S.H. No. 9); a package of cigarette rolling papers (N.S.H. p. 26, Commonwealth Exhibit S.H. No. 10); and a man's wallet containing fifteen hundred twenty-five dollars ($1,525.00) in U.S. currency, primarily consisting of fifteen one hundred

dollar bills (N.S.H. p. 26, Commonwealth Exhibit S.H. No. 11).

Trooper Wolf reentered the residence, informed Trooper Evanco that he had found alleged controlled substances in the automobile, informed Defendant that he would be charged with possession with intent to deliver controlled substances and advised Defendant of his constitutional rights under *Miranda v. Arizona*, 383 [384] U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). (N.S.H. pp. 12–13). Police did not question Defendant nor did Defendant give any statements at the residence. (N.S.H. pp. 13, 14). After executing the search warrant, the officers handcuffed Defendant and transported Defendant and several other individuals arrested at the scene to the Pennsylvania State Police barracks at Lancaster, Pennsylvania (hereafter "State Police barracks"). (N.S.H. pp. 13, 14, 27).

At 8:45 o'clock P.M., Trooper Evanco advised Defendant of his *Miranda* rights at the State Police barracks. (N.S.H. pp. 28–29). Defendant was not questioned by Trooper Evanco. (N.S.H. p. 29). Detective Brown was seated at a desk in the detective division of the State Police barracks when Defendant approached him and sat in a chair approximately three feet away. (N.S.H. pp. 37–38). Detective Brown and Defendant were acquainted through prior drug investigations and Defendant referred to Detective Brown by his nickname "Brownie." (N.S.H. p. 38). The following conversation ensued:

A. ... At that point he says to me, hi Brownie, how are you. I says okay. He says, what's up. I says, you're in big trouble.

* * * * * *

A. Kenny says, can't you cut me a break. And I says, why, Kenny, I said, you don't stop dealing. And he says, I'm not dealing. And I said, what's with the coke, weren't you bringing it to Henry. And he says, no, it's mine. And I said, well how much is there. He said, three and a half ounces.

At this point I had seen what was seized and I saw there were some bags of marijuana. I said to Kenny, what about the grass. I said, where is that from. And he nodded to Trooper Evanco and he said, from his neighbor.

(N.S.H. pp. 38–39). Detective Brown's supervisor asked him to make some telephone calls and Detective Brown had no further contact with Defendant. (N.S.H. p. 39).

Trial court opinion at 3–7.

Appellant filed an omnibus pre-trial motion in the nature of motion to suppress. On September 11, 1989, an evidentiary hearing was held on the motion to suppress, and the omnibus pre-trial motion was dismissed. On September 14, 1989, appellant filed post-verdict motions in arrest of judgment and for a new trial, which were denied and this timely appeal followed.

Appellant raises the following issues for our consideration:

[I.] Whether the lower court erred in dismissing the Defendant's motion to suppress the $1525 in currency and other items seized from the person of the defendant?

[II.] Whether the court erred in refusing to suppress the cocaine, marijuana, notebook, jacket, water pipe and other items seized from the automobile being operated by the defendant?

[III.] Whether the court erred in refusing to suppress the statements allegedly made by the defendant?

[IV.] Whether the Defendant was denied the effective assistance of counsel?

Appellant's brief at 3. As we find no merit to the issues raised in this appeal, we affirm the lower court's order dismissing appellant's motions in arrest of judgment and for a new trial.

■ Appellant's first issue concerns whether the lower court erred in dismissing appellant's motion to suppress $1,525.00 in currency and other items seized from his per-

son. This Court enunciated, in *Commonwealth v. Rodriguez*, 330 Pa.Super. 295, 479 A.2d 558 (1984), the scope of review from an order suppressing evidence:

> [W]e must determine whether the evidence supports the court's factual findings and whether the legal conclusions drawn from those findings were legitimate. This determination is made considering only the evidence of the prosecution's witnesses and so much of the defense evidence as, fairly read in the context of the record as a whole, remains uncontradicted. Findings supported by the record and legitimate legal conclusions drawn therefrom will not be disturbed. [internal citations omitted]

*Rodriguez, supra,* 330 Pa.Superior Ct. at 298, 479 A.2d at 560, *citing, Commonwealth v. Williams,* 317 Pa.Super. 456, 463–64, 464 A.2d 411, 414 (1983). *See also, Commonwealth v. Webb,* 491 Pa. 329, 332, 421 A.2d 161, 163 (1980) (citation omitted).

Appellant contends that the $1,525.00 in currency and other items seized from his person flowed from his arrest, which appellant argues was illegal and the items seized were the fruits of an illegal and unconstitutional arrest. We find that police did have probable cause to detain appellant, conduct a pat down search of his person and arrest appellant; the arrest was legal and his argument for suppression of the evidence must fail.

 We will review appellant's arguments in a chronological order. First, we must address whether the police had a right to detain appellant during the execution of a search warrant. Appellant argues that he was placed under arrest after he knocked on the front door and was brought into the house by Trooper Wolf. (N.T. p. 21.) We find no merit to appellant's contention, since it is well established that during the execution of a search warrant, police may properly detain persons who are found on the premises in order to minimize the possibility of harm to the officers and to prevent the concealment or destruction of evidence. *Commonwealth v. Markovitch,* 388 Pa.Super. 244, 250, 565 A.2d 468, 471 (1989), *citing Commonwealth v.*

*Carr*, 334 Pa.Super. 459, 483 A.2d 542 (1984). This temporary detention of appellant was not an arrest.

Our United States Supreme Court in *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), held that the detention of a suspect during the execution of a valid search warrant did not violate the suspect's Fourth Amendment right to be secure against unreasonable seizure of his person, since the warrant implicitly carried with it the limited authority to detain persons on the premises while a search warrant was being executed. *Id.* at 705, 101 S.Ct. at 2595, 69 L.Ed.2d at 351. The Supreme Court in *Summers* reasoned that this limited authority to detain persons on the premises was based on the desire to protect the safety of the police officers on the scene of the search. Justice Stevens, writing for the majority stated:

> Although no special danger to the police is suggested in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.

*Id.* at 702–703, 101 S.Ct. at 2594, 69 L.Ed.2d at 349–350. In the instant case, after appellant knocked on the front door of the residence being searched, police were justified in bringing appellant into the residence and detaining him. The police officers' right to detain appellant was based on the police officers' concern for their own safety and the safety of others. We find that the police properly detained appellant while executing a search warrant of the premises.

Next, it is well settled that police officers, after detaining an individual on the premises during the execution of a valid search warrant, may conduct a pat down search of the individual for weapons if they reasonably believe that person has a weapon in his possession. *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969), which was based on the United States Supreme Court case

of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Pennsylvania Supreme Court enunciated the standard for *Terry* stops and frisks in Pennsylvania:

> ... even if probable cause to arrest is absent, the police officer may still legitimately seize a person ..., and conduct a limited search of the individual's outer clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officer and others, if the police officer observes unusual and suspicious conduct on the part of the individual seized which leads him reasonably to conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous.

*Id.* 434 Pa. at 158–59, 253 A.2d at 279. The *Terry* search "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may be characterized as something less than a 'full' search, even though it remains a serious intrusion." *Commonwealth v. Davidson*, 389 Pa.Super. 166, 171, 566 A.2d 897, 899 (1989), *alloc. denied* in 525 Pa. 624, 578 A.2d 412 (1990), *quoting Terry*, 392 U.S. at 26, 88 S.Ct. at 1882.

In the instant case, upon review of the record, the trial court found and we agree that Trooper Wolf was justified in conducting a pat down search of appellant. Trooper Wolf recognized appellant and knew he formerly resided at the address being searched but had recently moved. (N.S.H. pp. 5, 16, 17, 10, 21.) Appellant knocked on the front door of the residence during the execution of a search warrant for narcotics at the house. Appellant had been the subject of numerous police investigations in the past, the trooper recognized appellant and reasonably believed that this person could be armed and dangerous. We find that Trooper Wolf was justified in conducting a pat down search of appellant.

■ The evidence in question, however, was not discovered during the pat down search conducted by Trooper Wolf but was discovered during a full search conducted by Troop-

er Evanco. Trooper Wolf conducted a pat down of appellant's person which produced no weapons. (N.S.H. pp. 7, 24–25, 30.) Then Trooper Wolf turned appellant over to Trooper Evanco (N.S.H. pp. 7–8, 24–25), at which time Trooper Evanco conducted a full search of appellant. (N.S.H. p. 25.) After Trooper Wolf conducted the *Terry* search and found no weapons, Trooper Evanco was not justified in conducting a full search of appellant. The *Terry* search was exceeded by Trooper Evanco, since it was not limited to the discovery of weapons. Now this Court must determine whether the exclusionary rule will apply to the instant case.

When the scope of a *Terry* search is exceeded, this alone does not automatically exclude the evidence seized from the illegal search. The United States Supreme Court in *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), stated:

It is clear that the cases implementing the exclusionary rule "begin with the premise that the challenged evidence is in some sense the product of illegal government activity." *United States v. Crews*, 445 U.S. 463, 63 L.Ed.2d 537, 100 S.Ct. 1244 (1980) (emphasis added). Of course, this does not end the inquiry. If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means—here the volunteers' search—then the deterrence rationale has so little basis that the evidence should be received. Anything less would reject logic, experience, and common sense.

*Williams, supra* at 444, 104 S.Ct. at 2509, 81 L.Ed.2d at 388. Our Pennsylvania courts have also recognized the inevitable discovery doctrine. In *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972), our Supreme Court held evidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence. The burden of proving such inevitable discovery rests with the prosecution.

In the instant case, the suppression court ruled that the money and other items found on appellant would have inevitably been discovered after appellant's arrest and the officers conducted a search incident to a lawful arrest. In reviewing this finding, we must consider only the Commonwealth's evidence and the uncontradicted evidence of appellant, and determine whether the lower court's finding is supported by the evidence. *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976). Applying this standard of review to the present finding, we find sufficient evidence to support the suppression court's finding of facts and conclusions of law.

At the suppression hearing, Trooper Wolf testified that appellant was arrested for possession of controlled substances found in his automobile. (N.S.H. p. 26.) Although Trooper Evanco was not justified at that time to conduct a full search of appellant, a full search would have been conducted after Trooper Wolf found the controlled substances in appellant's car and arrested him. Upon review of the record, it was established by a preponderance of the evidence that Trooper Wolf would have conducted a full search of appellant prior to transporting him to the State Police barracks. The evidence in question would have been inevitably discovered when police conducted a full search incident to a lawful arrest. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Commonwealth v. Bess,* 476 Pa. 364, 382 A.2d 1212 (1978). We find that the evidence found on appellant's person, specifically one thousand five hundred and twenty-five dollars ($1,525.00) and cigarette rolling papers, were properly admitted into evidence. We find appellant's argument to be devoid of merit.

■ Appellant's second issue concerns whether the trial court erred in denying appellant's motion to suppress evidence seized from his automobile. Appellant contends that the fact that the water pipe or "bong" was present in the automobile, alone, did not establish independent probable cause to believe that other items were present in the car.

Our Supreme Court in *Commonwealth v. Lewis*, 442 Pa. 98, 101, 275 A.2d 51, 52 (1971), enunciated the following:

> To justify ... a [warrantless] search ... an officer must have independent probable cause to believe that a felony has been committed by the occupants of the vehicle, or that it has been used in the furtherance of the commission of a felony, or the officer must have a basis for believing that evidence of a crime is concealed within the vehicle, or that there are weapons contained therein which are accessible to the occupants.

*Id.*, 442 Pa. at 101, 275 A.2d at 52. "Thus, where there exists probable cause related to the vehicle or its occupants, a search of the vehicle is permissible." *Commonwealth v. Milyak*, 508 Pa. 2, 8, 493 A.2d 1346, 1349 (1985). Probable cause is a common sense standard which "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime." *Commonwealth v. Rodriguez*, 379 Pa.Super 24, 28, 549 A.2d 578, 580 (1988), *quoting Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502, 514 (1983) (citation omitted). In the instant case, Trooper Wolf, with his twenty years' experience as a trooper, observed what he believed to be a waterpipe or "bong" in the interior of appellant's car, from a lawful vantage point. Trooper Wolf's observations gave rise to independent probable cause that contraband may be found in the vehicle. Independent probable cause can be based on evidence which the officer observes in plain view through an automobile window. *Commonwealth v. Ferrari*, 376 Pa.Super. 307, 326, 545 A.2d 1372, 1381 (1988).

The scope of a warrantless automobile search is controlled by the object of the search and the possible places in which the object may be found. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Commonwealth v. Bailey*, 376 Pa.Super. 291, 545 A.2d 942 (1988), *alloc. denied* in 521 Pa. 609, 557 A.2d 341. Applying this standard to the present case, it is clear that Trooper Wolf

had probable cause to search the passenger compartment of the vehicle, the field jacket and containers therein, as possible places where drugs may be found. We find no merit to the issue raised by appellant, and the motion to suppress cocaine, marijuana and drug paraphernalia was properly denied by the lower court.

Appellant's third issue concerns whether the lower court erred in denying appellant's motion to suppress statements made by appellant subsequent to his arrest. Appellant contends that certain statements made at the State Police barracks were the product of the prior illegal conduct of the police. The following conversation ensued, as testified by Detective Brown:

A. ... At that point he says to me, hi Brownie, how are you. I says okay. He says, what's up. I says, you're in big trouble.

\* \* \* \* \* \*

A. Kenny says, can't you cut me a break. And I says, why, Kenny, I said, you don't stop dealing. And he says, I'm not dealing. And I said, what's with the coke, weren't you bringing it to Henry. And he says, no, it's mine. And I said well, how much is there. He said, three and a half ounces.

(N.S.H. pp. 38–39). Since we have previously found that the detainment and automobile search of appellant's car was lawful, the statements made by appellant were not the fruit of the poisonous tree, and were properly admitted into evidence.

Appellant also contends, however, that the statements must be suppressed since appellant never explicitly waived his *Miranda* rights. In *Commonwealth v. Bussey*, 486 Pa. 221, 404 A.2d 1309 (1979), the Pennsylvania Supreme Court held that an explicit waiver to the *Miranda* warnings is a mandatory requirement.[2] At the suppression hearing, the

2. In *Bussey*, the Supreme Court stated, "By explicit waiver, we mean an outward manifestation of a waiver such as an oral, written or physical manifestation." *Id.* 486 Pa. at 231 n. 11, 404 A.2d at 1314 n. 11.

Commonwealth conceded this point; the lower court found, and we agree, that there was no explicit waiver prior to the admission of the statements. Although the lower court found there was no explicit waiver, it found no error admitting the statements as volunteered and gratuitous statements, and not part of the police interrogation.

Custodial interrogation has been defined as "questioning *initiated* by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." *Commonwealth v. Johnson*, 373 Pa.Super. 312, 319, 541 A.2d 332, 336 (1988), *alloc. denied* in 520 Pa. 596, 552 A.2d 250, *quoting Commonwealth v. Sites*, 427 Pa. 486, 492, 235 A.2d 387, 390 (1967) (emphasis supplied). " 'Interrogation' is police conduct 'calculated to, expected to or likely to evoke admission.' " *Johnson, supra* 373 Pa.Super. at 320, 541 A.2d at 336, *quoting Commonwealth v. Brantner*, 486 Pa. 518, 527, 406 A.2d 1011, 1016 (1979) (*quoting Commonwealth v. Simala*, 434 Pa. 219, 226, 252 A.2d 575, 578 (1969)). An inculpatory statement which is not made in response to police interrogation, then, "is classified as a volunteered statement, gratuitous and not subject to suppression for lack of warnings." *Johnson, supra* 373 Pa.Super. at 320, 541 A.2d at 336, *quoting Commonwealth v. Whitley*, 500 Pa. 442, 445, 457 A.2d 507, 508 (1983) (citations omitted). In the instant case, appellant asked Detective Brown, whom he had known previously, "What's up?" Detective Brown replied, "You're in big trouble." Detective Brown's response was not likely to, nor expected to, evoke admission. Detective Brown simply made a comment which was not of an inquisitive nature. Appellant's reply, "Can't you cut me a break?", was a volunteered statement and not the result of police interrogation. The trial court found, and we agree, that the remainder of Detective Brown's question, "why, Kenny, I said, you don't stop dealing" was suppressible since it was of an inquisitive nature and likely to evoke an admission from appellant.

Now our Court must determine whether the trial court, by admitting the statements, committed reversible error. In order to reverse a lower court decision, the error complained of must constitute reversible error. Reversible error will be found where the evidence ruling is shown by the complaining party to be not only erroneous but harmful to the final outcome. *Hart v. W.H. Stewart, Inc.*, 523 Pa. 13, 16, 564 A.2d 1250, 1252 (1989) (citation omitted). On the other .hand, the Pennsylvania Supreme Court stated that a harmless error occurs when, "the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." *Commonwealth v. Story*, 476 Pa. 391, 412, 383 A.2d 155, 166 (1978), *citing Commonwealth v. Davis*, 452 Pa. 171, 178–179, 305 A.2d 715, 719 (1973) (citation omitted).

The lower court found the properly admitted and uncontradicted facts of this case to be, as follows:

(1) that defendant was the driver and only male occupant of the vehicle from which the man's jacket containing the cocaine and marijuana was seized; (2) that the nearly four ounces of cocaine found in the jacket had a resale value of between approximately $3,800.00 if sold by the ounce or $10,500.00 if sold by the gram; (3) that Trooper Evanco testified on the basis of his twenty years in drug law enforcement that the additional half-gram bag of cocaine found in the jacket was packaged in a manner and quantity ready for resale (N.T. pp. 60–61); (4) that the notations in the notebook found in the jacket were consistent and highly indicative of the records of drug sales (N.S.H. pp. 62–64); (5) that defendant possessed the above-mentioned controlled substances, notebook and $1,525.00 in cash upon his arrival at a residence for which police had obtained a search warrant based on probable cause to believe that drug sales were taking place; and (6) that after his arrest defendant requested Detective Brown to "cut him a break"....

Trial court opinion at 22. This evidence which was properly admitted and is so overwhelming of appellant's guilt of possession of marijuana and possession with intent to deliver cocaine. Appellant's statement, admitting the drugs to be his, is so insignificant by comparison to the overwhelming evidence establishing guilt beyond a reasonable doubt that appellant was not prejudiced by the error nor did the error contribute to the verdict. The error complained of by appellant is harmless error and the lower court decision will not be overturned. We find no merit to the issue raised by appellant.

Next, appellant contends that trial counsel was ineffective for failing to call a witness. As a general principle, trial counsel is presumed to be effective and appellant has the burden of proving otherwise. Our Supreme Court enunciated the following appellate standard for reviewing a claim of ineffectiveness of counsel:

There are three elements to a valid claim of ineffectiveness. We inquire first whether the underlying claim is of arguable merit; that is, whether the disputed action or omission by counsel was of questionable legal soundness. If so, we ask whether counsel had any reasonable basis for the questionable action or omission which was designed to effectuate his client's interest. If he did, our inquiry ends. If not, the appellant will be granted relief if he so demonstrates that counsel's improper course of conduct worked to his prejudice, i.e., had an adverse effect upon the outcome of the proceedings.

*Commonwealth v. Pierce*, 515 Pa. 77, 83, 541 A.2d 315, 318 (1988), *citing, Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977); *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

More specifically, with respect to appellant's allegations of ineffective assistance of counsel in the context of trial counsel's failure to call a witness, this Court has stated that appellant must demonstrate the following:

(1) the identity of the witness;

(2) that counsel knew of the existence of the witnesses,

(3) the material evidence that the witnesses would have provided and,

(4) that manner in which the witnesses would have been helpful to his cause.

*Commonwealth v. Polk*, 347 Pa.Super. 265, 500 A.2d 825 (1987).

Appellant argues that trial counsel failed to call Sara Lafeld,[3] who was prepared to testify that she did not notice a waterpipe or "bong" in the front seat of the car. The Commonwealth contends that the testimony of Sara Lafeld would have been given little weight. Appellant has shown by affidavit, Exhibit A, that Sara Lafeld was willing and available to testify and trial counsel knew of the existence of the witness. "Assuming appellant's counsel knew of the witnesses, failure to call possible ... witnesses is not per se ineffective assistance of counsel." *Commonwealth v. Robinson*, 487 Pa. 541, 546, 410 A.2d 744, 746 (1980), *quoting Commonwealth v. Owens*, 454 Pa. 268, 274, 312 A.2d 378, 381–382 (1973). The decision of whether to call a witness is a matter of trial strategy. *Robinson, supra.*

In the present case, it is unlikely that the testimony of Sara Lafeld regarding the waterpipe or "bong" would have been helpful to appellant's case, as the credibility of this witness would be seriously questioned by a jury due to the nature of the relationship between appellant and the witness. *Commonwealth v. Porter*, 524 Pa. 162, 569 A.2d 942 (1990) (Defense counsel's decision not to call witnesses cannot be faulted when their testimony could be easily subverted.). Therefore, appellant has failed to meet his burden of proving that trial counsel acted unreasonably and hence, trial counsel was not ineffective for failing to call the witness.

As we find no merit to the issues raised in this appeal, we affirm the lower court order and judgment of sentence. Judgment of sentence affirmed.

**3.** Sara Lafeld was the unidentified female in the automobile with Kenneth Hoffman on April 7, 1989. Appellant's brief at 29.