## Commonwealth v. Tsopanis-Sellari

166

*Jason C. Glessner, assistant district attorney,* for Commonwealth.

*Eric Winter,* for defendant.

LUDGATE, *J.,* September 22, 2009—This is a timely appeal filed by Nikos Tsopanis-Sellari (defendant) to challenge this court's denial of the defendant's pretrial motion to suppress physical evidence and imposition of mandatory minimum sentence pursuant to 42 Pa.C.S. §9712.1. The court adopts and incorporates its findings of fact and conclusions of law dated March 18, 2009 into this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

On December 3, 2008, the defendant was charged in a bill of information with Count 1, possession of a controlled substance with intent to distribute (marijuana), 35 P.S. 780-113(a)(30), Count 2, possession of a con-

trolled substance (marijuana), 35 P.S. 780-113(a)(16), Count 3, possession of drug paraphernalia, 35 P.S. 780-113(a)(32) and Count 4, prohibited weapons offense, 18 Pa.C.S. §908(a).

A hearing was held before this court on February 9, 2009 on the defendant's omnibus pretrial motion, in which the defendant sought to suppress physical evidence, suppress statements and a writ of habeas corpus as to all counts.

On March 18, 2009, this court issued findings of fact and conclusions of law and order, denying the defendant's motion for suppression of physical evidence, motion for suppression of statements and motion for pretrial writ of habeas corpus. That document has been incorporated into this opinion.

On June 11, 2009, a stipulated bench trial was held before this court and the defendant was found guilty of all counts. On July 24, 2009, the court sentenced the defendant to the five-year mandatory sentence[1] for Count 1, possession with intent to deliver marijuana, 35 P.S. 780-113(a)(30), in addition to five years state parole for Count 4, prohibited weapons offense, 18 Pa.C.S. §908(a), and 12 months state parole for Count 3, possession of drug paraphernalia, 35 P.S. 780-113(a)(32). The defendant, through counsel, filed a timely notice of appeal on August 24, 2009 and concise statement on September 2, 2009.

---

1. On this date, the court allowed the defendant to remain on bail pending disposition of this appeal, in part due to the defendant's health condition.

## II. ISSUES RAISED BY THE DEFENDANT

The defendant, through counsel, raises the following issues for review on appeal:

"(1) Whether this court erred in denying the defendant's motion to suppress the seized marijuana, sawed-off shotgun, his statements and the fruit thereof because:

"(a) The probation officers could not legally detain, subject the defendant to an investigative detention or threaten the defendant with a search as he was only on ARD and therefore not subject to their authority.

"(b) The probation officers lacked the reasonable suspicion and/or probable cause necessary to make such a detention, seizure or to threaten a search.

"(c) The statements to the probation officers and the disclosure of the marijuana and sawed-off shotgun were not consensual as the defendant was under duress at the time and his consent was not knowing, intelligent and voluntary as the probation officers had falsely represented their authority.

"(d) Defendant's statements in the kitchen and the fruits thereof were unlawfully obtained as the defendant was handcuffed in custodial detention and had not been informed of his *Miranda* rights prior to questioning.

"(2) Whether this court erred in imposing the mandatory sentence under 42 Pa.C.S. §9712.1 because:

"(a) The mandatory language is unconstitutionally vague as it fails to provide a precise definition of the term 'close proximity.'

"(b) The mandatory should not have been imposed as the Commonwealth failed to prove the sawed-off shotgun was in 'close proximity' to the marijuana.

"(c) The mandatory should not be imposed as it is constitutionally overbroad in that it criminalizes possession of weapons that are otherwise lawfully possessed in violation of the United States and Pennsylvania Constitutions.

"(d) Considering the nature of the defendant's cystic fibrosis, imposition of the mandatory constitutes cruel and unusual punishment in violation of the United States and Pennsylvania Constitutions.

"(e) Imposing the mandatory sentence in this instance is in violation of United States and Pennsylvania Constitutions in that the mandatory sentence is grossly disproportionate to the crime that was committed and the punishment for similar crimes. In particular, the mandatory calls for a sentence 15 times greater than the aggravated range of the Pennsylvania sentence guidelines.

"(f) The mandatory should not have been imposed as the Commonwealth failed to prove that the sawed-off shotgun was a 'firearm' for the purposes of the mandatory statute."

## III. ANALYSIS

### (1) *Discovery of the Marijuana and Shotgun*

### (a) Authority of Probation Officers

The defendant asked this court to suppress evidence based on alleged lack of authority of the probation of-

ficers over individuals on ARD. This argument is based on 61 P.S. §331.27b, which provides:

"(a) County probation and parole officers are in a supervisory relationship with their offenders. The purpose of this supervision is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public.

"(b) County probation and parole officers and, where they are responsible for the supervision of county offenders, state parole agents are authorized to search the person and property of county offenders in accordance with the provisions of this section. County probation officers are authorized to search, in accordance with the provisions of this section, the person and property of any offender who accepts Accelerated Rehabilitative Disposition (ARD) as a result of a charge of a violation of 18 Pa.C.S. ch. 31 (relating to sexual offenses) if the court has determined that the offender shall be subject to personal and property searches as a condition of the offender's participation in the ARD program. The court shall notify each offender so offered ARD, prior to admission to an ARD program, that the offender shall be subject to searches in accordance with this section. Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or Section 8 of Article I of the Constitution of Pennsylvania.

"(c) No violation of this section shall constitute an independent ground for suppression of evidence in any probation and parole or criminal proceeding.

"(d)

"(1) A personal search of an offender may be conducted by any officer:

"(i) if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision;

"(ii) when an offender is transported or taken into custody; or

"(iii) upon an offender entering or leaving the securing enclosure of a correctional institution, jail or detention facility.

"(2) A property search may be conducted by any officer if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision. . . .

"(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

"(i) The observations of officers.

"(ii) Information provided by others.

"(iii) The activities of the offender.

"(iv) Information provided by the offender.

"(v) The experience of the officers with the offender.

"(vi) The experience of officers in similar circumstances.

"(vii) The prior criminal and supervisory history of the offender.

"(viii) The need to verify compliance with the conditions of supervision. . . .

"(g) As used in this section, the following words and phrases shall have the meanings given to them in this subsection: . . .

" 'Offender.' Any person released on county probation, intermediate punishment or county parole. The term shall not include any person serving a period of probation pursuant to Accelerated Rehabilitative Disposition, except as authorized under subsection (b) (persons on ARD for sexual offenses)."

Probation officers are empowered by the statute to exercise authority over individuals on probation or parole; the statute specifically excludes individuals on ARD[2] from being subject to this authority. The defendant asserts that this statute does not grant the probation officers authority over him. However, in the facts particular to this case, the probation officers were granted authority by Pa.R.Crim.P. 316, the court of common pleas order dated March 17, 2008 and the defendant's agreement to ARD conditions on the same day. (N.T., pretrial hearing 2/9/09, pp. 61-62, 68.)

Pennsylvania Rule of Criminal Procedure 316 provides:

"Conditions on the program:

"(A) The conditions of the program may be such as may be imposed with respect to probation after conviction of a crime, except that a fine may not be imposed. In addition, the conditions of the program may include the imposition of costs, the imposition of a reasonable charge relating to the expense of administering the pro-

---

2. Although individuals on ARD for certain sexual offenses are included as offenders, this exception is inapplicable to this case.

gram, and such other conditions as may be agreed to by the parties. . . ."

Under this rule, the court may impose probation conditions on a defendant placed on ARD. That which is a permissible probation condition is also permissible for the person on ARD (other than a fine).

The court of common pleas had authority to issue an order placing a defendant on ARD and authorizing the probation office to determine the specific conditions of the ARD program and board authority to modify the conditions. *Commonwealth v. Lebo,* 713 A.2d 1158, 1161 (Pa. Super. 1998), *appeal denied,* 558 Pa. 617, 737 A.2d 741 (1999). The imposition of ARD conditions on a defendant by a county probation office is permissible, even when new conditions are imposed after admission to the ARD program. *Id.* When the court order placing a defendant on probation or parole does not authorize the county probation/parole office to impose additional conditions, violation of conditions imposed by that officer is not a basis upon which to revoke probation/parole. *Commonwealth v. MacGregor,* 912 A.2d 315 (Pa. Super. 2006).

Specifically, on March 17, 2008, the judge in the aforementioned case placed the defendant on ARD and ordered, in relevant part:

"(4) You shall submit to urine surveillance and other testing and pay such costs of testing as directed.

"(5) Participate in such special treatment program(s), including any in-patient treatment, as directed by the Berks County Adult Probation Office and pay such costs for said treatment programs as directed. . . .

"(7) You shall not violate any penal law in Pennsylvania or in any other jurisdiction.

"(8) You shall comply with such additional conditions as may be imposed by the Berks County Adult Probation Office." (N.T. 2/9/09 pp. 61-62; Commonwealth's exhibit 1.)

Pursuant to subsection (8) of the court order placing the defendant on ARD, the defendant signed a form entitled "Conditions Governing Probation & Parole" which was signed by the defendant on March 17, 2008, acknowledging he read, understood and agreed to follow the conditions. This document provides, in relevant part:

"(7) I acknowledge that the probation office has the authority to conduct a search of my person, home, or vehicle without a search warrant. I will notify all person [sic] in my residence that the probation office has that authority to conduct a warrantless search.

"(8) I will comply with the following special conditions: . . .

"(d) I will comply with urine testing as directed by the Berks County Adult Probation and Parole Office. I understand that a positive urine and/or missed appointments may result in violation of my probation. . . .

"*ARD cases only:*

"(13) If you are admitted into the Accelerated Rehabilitation Disposition Program (ARD) and fail to comply with the conditions governing ARD probation including payment of costs and restitution, you are subject to removal from the ARD program and your case may be

returned to the criminal trial list for prosecution." (N.T. 2/9/09 pp. 68-69; Commonwealth's exhibit 3.)

Based on *Lebo,* the court ruled the ARD conditions were validly imposed by court order and corresponding conditions imposed by the probation office. *MacGregor* is inapplicable because the court order did authorize the additional conditions imposed by the Berks County Adult Probation Office. The probation officers possessed authority pursuant to these conditions.

### (b) Reasonable Suspicion and "Duress"

Even when probation conditions allowing for warrantless searches of a defendant are agreed to by a defendant, probation officers cannot search a probationer at any time for any reason. Interpreting 61 P.S. §331.27b(d)(1)(i), the Superior Court has said "a personal search of an offender may be conducted by any officer . . . if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision." *Commonwealth v. Moore,* 805 A.2d 616, 620 (Pa. Super. 2002); see also, *Commonwealth v. Hunter,* 963 A.2d 545 (Pa. Super. 2008); *Scott v. Pennsylvania Board of Probation and Parole,* 548 Pa. 418, 427-28, 698 A.2d 32 (1997), *rev'd on other grounds,* 524 U.S. 357 (1998); *United States v. Baker,* 221 F.3d 438 (3d Cir. 2000). Accordingly, "a parolee and a probationer have limited Fourth Amendment rights because of a diminished expectation of privacy . . . the requirement that a parole [or probation] officer obtain a warrant based on probable cause before conducting a search does not apply." *Moore,* 805 A.2d at 620 (citing *Commonwealth v. Williams,* 547 Pa. 577,

584, 692 A.2d 1031, 1035 (1997). Essentially, the probationer/parolee agrees to endure warrantless searches based only on reasonable suspicion (rather than probable cause) in exchange for their early release from prison. *Commonwealth v. Curry,* 900 A.2d 390, 394 (Pa. Super. 2006).

In *Commonwealth v. Scott,* 916 A.2d 695 (Pa. Super. 2007), the defendant was visiting the home of his uncle, who was on probation at the time. Probation officers told the defendant to stop and stated they had the right to search his backpack. This claim prompted the defendant to hand the officers his backpack. Officers opened the backpack upon the return of the uncle to discover marijuana and scales. The trial court granted suppression, finding the officer's claim of authority was false as the officer only possessed authority to search the uncle; the Superior Court affirmed.

Reasonable suspicion in the context of a search of a probationer, parolee or person on ARD (subject to probation conditions by consent) is governed by 61 P.S. §331.27b(d)(6), stated above. In this case, the probation officers needed to verify the compliance with the conditions of the defendant's ARD supervision, namely that he was actually living at the address and was not in possession of contraband. Both probation officers observed the defendant's nervous and evasive behavior of pacing throughout the kitchen, not acknowledging the officers and not making eye contact. His suspicious conduct continued after entry into the defendant's bedroom, where he sat with his head down looking at the floor, his hands between his legs and still refusing to make eye contact with the officers. A.P.O. Starr, an experienced

officer, found this behavior peculiar for someone on ARD supervision.

Based on the applicable factors and case law, the court concluded no search occurred; A.P.O. Starr accurately indicated his authority as stated in the ARD conditions, signed by the defendant. Because A.P.O. Starr possessed reasonable suspicion, his claim of authority to search the room was valid; the defendant was not under duress.

## (c) *Miranda*—Custodial Interrogation

The defendant requested this court suppress his statements because the statements were made during custodial interrogation without the benefit of *Miranda* warnings. This argument is flawed because the defendant's statement was not the product of custodial interrogation. The handcuffing was done for purposes of officer safety. A.P.O. Starr's question regarding anything else the officers should know about was not reasonably likely to elicit an incriminating response. See *Commonwealth v. Clinton,* 905 A.2d 1026 (Pa. Super. 2006) (finding an officer's question regarding "anything else he should be aware of" during a traffic stop would not normally be interpreted as an invitation for a criminal to confess his crimes and was a minimally intrusive means of protecting the safety of the officer). Immediately upon securing the scene, the probation officers ceased questioning and referred the matter to township police and county detectives, who proceeded to obtain a search warrant.

Assuming for the sake of argument that the defendant was subject to custodial interrogation, suppression of the sawed-off shotgun is not the remedy in this case. See *Commonwealth v. Hoffman,* 403 Pa. Super. 530, 541, 589

A.2d 737, 743 (1991) ("If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale [of suppression] has so little basis that the evidence should be received. Anything less would reject logic, experience, and common sense."); *Commonwealth v. Ingram,* 814 A.2d 264 (Pa. Super. 2002). The shotgun would have inevitably been found upon execution of the search warrant, which permitted search of the defendant's bedroom. The shotgun was hidden under a couch cushion in the defendant's bedroom.

### (2) *The Mandatory Minimum Sentence*

42 Pa.C.S. §9712.1(a) provides:

"*Mandatory sentence.*—Any person who is convicted of a violation of section 13(a)(30) of the Act of April 14, 1972 (P.L. 233, no. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, when at the time of the offense the person or the person's accomplice is in physical possession or control of a firearm, whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance, shall likewise be sentenced to a minimum sentence of at least five years of total confinement."

### (a) Constitutionality of "Close Proximity"

The "void for vagueness" doctrine requires penal statutes to define criminal conduct with sufficient definiteness such that ordinary people can understand what conduct is prohibited and in such a manner to discourage

arbitrary and discriminatory enforcement. *Commonwealth v. Costa,* 861 A.2d 358 (Pa. Super. 2004). When a defendant's conduct is clearly prohibited by statute, that defendant cannot complain of the vagueness of the statute as applied to the conduct of others. *Id.*

As stated in greater detail in section III(2)(b) of this opinion, the defendant's conduct was clearly within the mandatory minimum statute. Accordingly, the court declines to address hypothetical scenarios regarding the outer limits of "close proximity."

### (b) Proof of "Close Proximity"

*Commonwealth v. Sanes,* 955 A.2d 369 (Pa. Super. 2008), provided an expansive definition of "close proximity"; the defendant need not be in physical possession or control of the weapon, nor must the firearm be "within reach." Rather, *Sanes* ruled a firearm located in a closet approximately six to eight feet from a dresser where drugs were found was in "close proximity" for purposes of the mandatory minimum sentence. *Id.* at 376. Similarly, in *Commonwealth v. Zortman,* the Superior Court ruled that a gun found in a bedroom was in "close proximity" to drugs found in the kitchen of the same residence, 2009 WL 2142360 (Pa. Super. 2009).

In the instant case, the adult probation officers testified the defendant retrieved the bag of prepackaged marijuana from a dresser in his bedroom, and then later told the officers of a sawed-off shotgun under a cushion of a couch in the same bedroom. (N.T., 2/9/09 pp. 35-36.) Under *Zortman* and *Sanes,* the items were proven to be in close proximity.

### (c) Overbreadth

The defendant avers that the mandatory minimum statute is unconstitutionally overbroad in that it penalizes otherwise lawful firearm possession, the right of gun possession being a protected right under the United States Constitution. *District of Columbia v. Heller,* 128 S.Ct. 2783 (U.S. 2008). *Heller* struck down a District of Columbia statute against possession of all handguns and requiring any other firearm lawfully possessed in the home to be rendered inoperable; *Heller* pronounced the Second Amendment is not violated by laws prohibiting the possession of firearms by felons or the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings. *Id.* at 2816-17, 2821-22. The list of permissible regulations on firearms provided by the *Heller* opinion was not intended to be exhaustive. *Id.* at 2817 n.26.

Contrary to counsel's argument, the firearm in this case was not lawfully possessed but for the mandatory minimum. A sawed-off shotgun is a prohibited weapons offense. 18 Pa.C.S. §908(a). The issue is not ripe for review, as the overbreadth challenge is based solely upon hypothetical facts not present in the instant case, *i.e.,* possession of a non-prohibited weapon in close proximity to controlled substances. See *Van Doren v. Mazurkiewicz,* 695 A.2d 967, 971 (Pa. Commw. 1997) (stating that "[t]he ripeness doctrine [is] premised on the notion that 'judicial machinery should be conserved for problems which are real and present or imminent, not squandered on problems which are abstract or hypothetical or remote.'").

## (d) Cruel and Unusual Punishment
## Due to Defendant's Health

The defendant argues the sentence imposed is cruel and unusual punishment because, due to his cystic fibrosis, it may in fact be a life sentence. The contention is without merit. The incarceration of a physically infirm individual does not per se constitute cruel and unusual punishment. *Commonwealth v. O'Neil,* 393 Pa. Super. 111, 573 A.2d 1112 (1990). Concerning a defendant infected with the Human Immunodeficiency Virus (HIV), the Superior Court has said "[t]hat appellant may not live to see the end of his term of imprisonment does not, without more, make his sentence [of imprisonment] unconstitutional. We recognize the gravity of appellant's situation, but cannot and will not make the sweeping pronouncement he seeks." *Id.* at 116, 573 A.2d at 1115. Similar pronouncements have been made regarding other health conditions. See *Commonwealth v. Carr,* 375 Pa. Super. 168, 543 A.2d 1232 (1988) (defendant was elderly and mentally ill); *Commonwealth v. Vosburg,* 393 Pa. Super. 416, 574 A.2d 679 (1990) (defendant suffered mental retardation); *Commonwealth v. Landi,* 280 Pa. Super. 134, 421 A.2d 442 (1980) (defendant was paraplegic).

## (e) "Grossly Disproportionate" Sentence

The defendant further opposes imposition of the mandatory minimum sentence by claiming the sentence is constitutionally infirm due to a penalty which is disproportionate to the criminal conduct. However, "[a] punishment authorized by [statute] violates the proscription against cruel and unusual punishment only if it is so

disproportionate to an offense as to offend evolving standards of decency or a balanced sense of justice." *Commonwealth v. Carr,* 375 Pa. Super. 168, 175, 543 A.2d 1232, 1235 (1988). Fixing of prison terms for specific crimes involves a substantive judgment, properly within the province of the legislature, not the courts. *Commonwealth v. Parker,* 718 A.2d 1266 (Pa. Super. 1998). The guarantee against cruel punishment contained in the Pennsylvania Constitution provides no broader protections against cruel and unusual punishments than those afforded by the Eighth Amendment of the United States Constitution. *Commonwealth v. Spells,* 417 Pa. Super. 233, 612 A.2d 458 (1992).

Section 9712 recognizes the seriousness of felonies committed with firearms and encompasses a determination to protect the public from those armed with firearms, to deter violent crime and the illegal use of firearms and to vindicate the legislature's interest in punishing those who commit serious crimes while armed with firearms. *Commonwealth v. Wright,* 508 Pa. 25, 40-41, 494 A.2d 354, 362 (1985). Accordingly, the five-year mandatory sentence is not disproportionate to the crime committed. *Commonwealth v. Ehrsam,* 355 Pa. Super. 40, 62, 512 A.2d 1199, 1210 (1986); *Commonwealth v. Green,* 406 Pa. Super. 120, 593 A.2d 899 (1991).

### (f) Statutory Definition of "Firearm"

This contention is wholly meritless. See *Commonwealth v. Zortman,* 2009 WL 2142360 (Pa. Super. 2009) (holding a gun, while inoperable due to the absence of a firing pin, did constitute a firearm for purposes of section 9712.1, based upon the definition of

"firearm" provided in 42 Pa.C.S. §9713). The Commonwealth need not prove operability of the weapon.

For all the above-mentioned reasons, the court respectfully requests the defendant's appeal be denied.