## ORDER

**In re N.M.**

*Luann Parkonen, assistant district attorney,* for Commonwealth.

*Stanley T. Booker,* for defendant.

MOTTO, *P.J.*, May 12, 2010—Before the court for disposition is the Juvenile's motion to suppress evidence, wherein N.M. seeks the suppression of physical evidence seized from his person, as well as statements made by him following a stop and subsequent arrest of the Juvenile. The Juvenile contends that the police officers had neither reasonable suspicion nor probable cause to effectuate a stop of him nor to subsequently arrest and search him in connection with that stop. The Juvenile further contends that his subsequent statements were the result of the illegal stop and arrest and, in part, were statements made as the result of police questioning of him while in custody and without being afforded *Miranda* warnings.

The facts found by the court are derived from the evidence presented at the suppression hearing.

On January 13, 2010, Deputy Sheriff Joseph Mangino was on duty when he was dispatched to Union Township in the area of Sunny Avenue and Atlantic Avenue, the dispatch stating that multiple gunshots had been fired in that area by black male subjects. Deputy Sheriff Mangino proceeded to the area of Sunny Avenue and Atlantic Avenue, and upon arrival at that area, he observed three black males running. Deputy Sheriff Mangino stopped his patrol car, exited and directed the three black males to stop. Two of the males continued running and were never apprehended; however, the Juvenile herein did stop. Deputy Sheriff Mangino held the Juvenile at gunpoint and asked him if he had any weapons on him. The Juvenile responded that he did have a gun. While Deputy Sheriff Mangino held the Juvenile at gunpoint, New

Castle Police Officer Conti arrived and placed the Juvenile in handcuffs and retrieved the gun from the Juvenile's right front pocket. The Juvenile was at that time taken into custody. The place of detention was approximately 100 to 150 yards from the residence where the gunfire was reported to have occurred. After retrieving the gun, and after arrest, Officer Conti also retrieved from the Juvenile's pockets a prescription bottle with multiple pieces of suspected crack cocaine.

The Juvenile was then brought to the New Castle Police Station. At the New Castle Police station, Union Township Police officer Michael Mrozek conducted an interrogation of the Juvenile. He was questioned after having been first advised of his *Miranda* warnings and in the presence of his parent or guardian. The Juvenile stated he had found the gun behind the Harbor Heights Projects and that he did have the gun in his possession for his protection.

The foregoing facts require an examination of two levels of inquiry: first, inquiry into the legality of the initial stop of the Juvenile, and secondly, the propriety of immediately seizing the firearm from the Juvenile subsequent to the stop. Where police have a reasonable suspicion that criminal activity is afoot, they may make a temporary, investigatory stop even though they lack probable cause to make an arrest. *Commonwealth v. Capers,* 340 Pa. Super. 136, 141, 489 A.2d 879, 881 (1985). The initial stop of a person is legitimate if the investigating officers can point to specific and articulable facts which, in conjunction with rational inferences deriving therefrom, reasonably warrant the intrusion. *Com-*

*monwealth v. Prengle,* 293 Pa. Super. 64, 68, 437 A.2d 992, 994 (1981). A subsequent frisk for weapons is authorized only where a police officer observes unusual conduct which leads him reasonably to conclude, in light of his experience, that criminal activity may be afoot and that the person with whom he is dealing may be armed and presently dangerous. Although *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1969) authorizes a brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information, the search or frisk of a suspect incident to such stop must meet a higher threshold of justification. Thus, where a stop of a suspicious individual has been made pursuant to *Terry,* a limited search of the individual's clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officer and others may be made only if the police officer observes unusual and suspicious conduct reasonably leading to the conclusion, not only that criminal activity is afoot, but also that the person with whom he is dealing may be armed and dangerous. *Commonwealth v. Hicks,* 434 Pa. 153, 158-159, 253 A.2d 276, 279 (1969). A police officer need not personally observe unusual or suspicious conduct reasonably leading to the conclusion that criminal activity is afoot and that a person is armed and dangerous, and may rely upon information which is broadcast over a police radio in order to justify an investigatory stop. *Commonwealth v. Prengle,* 239 Pa. Super. at 68, 437 A.2d at 994. Factors to be considered in justifying an investigatory stop and subsequent frisk include the specificity of the description of the subject in conjunction with how well

the subject fits the given description, the proximity of the crime to the sighting of the suspect, the time and place of the confrontation, and the nature of the offense reported to have been committed. See *Commonwealth v. Whelton,* 319 Pa. Super. 42, 50 n.4, 465 A.2d 1043, 1049 n.4 (1983). There are various factors which may cause a police officer to believe that a person they have stopped and intend to frisk may be armed and dangerous, and that they may be in danger. An expectation of danger may arise if the crime reported to have been committed is a violent crime, *Commonwealth v. Prengle, supra,* 239 Pa. Super. at 69, 437 A.2d at 995; where the perpetrator is reported to possess or to have used a weapon, *Commonwealth v. Capers, supra,* 340 Pa. Super. at 141, 489 A.2d at 881; where the police officer observes suspicious behavior or the presence of suspicious bulges in clothing, *Commonwealth v. Carter,* 334 Pa. Super. 369, 373, 483 A.2d 495, 497 (1984).

The court finds the case of *Commonwealth v. Jackson,* 359 Pa. Super. 433, 519 A.2d 427 (1986) to be instructive in resolving the issues in this case. In *Jackson,* the defendant was subject to a stop and subsequent search of a gym bag in his possession at the time of the stop in which a loaded revolver was found. As the result of the stop and search of his gym bag, defendant was convicted of carrying a firearm without a license and carrying a firearm on a public street. The Superior Court found that although the initial stop of defendant was proper as an investigatory stop, the subsequent search of his gym bag, incident to the stop, was improper as the police officers did not have a reasonable suspicion that the defen-

dant was armed and dangerous at the time of the investigatory stop.

The facts in *Jackson* were that two Philadelphia police officers responded to a radio call ordering them to investigate a burglary at 317 North 63rd Street in Philadelphia. The officers met with the complainant who advised them at 3:20 p.m. two males had tried to kick in his front door, and that one of them, a black male wearing a gray sweat suit, ran east on Vine Street. Within two or three minutes of responding to the radio call, and approximately two blocks from the complainant's home, the officers had spotted the defendant, a black male wearing a gray sweat suit, and carrying a blue gym bag, running west on Vine Street, towards the scene of the crime. When stopped, this individual did not attempt to flee. Without questioning defendant, the officers patted him down and then searched his gym bag from which was retrieved the loaded revolver. A subsequent on-sight identification was conducted and the complainant did not identify the defendant as one of the perpetrators.

The *Jackson* court concluded that although the police justifiably stopped the defendant, the immediate frisk of his person and search of his bag was improper. The court noted that it was not holding that the police must always question a suspect before frisking him, but concluded that based upon particular facts of the case, the police should have attempted to elicit some clarifying information from defendant before frisking him and searching his closed bag.

In view of the foregoing, it is clear that the initial stop of the Juvenile in this case was justified. Deputy Sheriff

Mangino heard a radio call relative to shots fired in the area of Sunny Avenue and Atlantic Avenue. The call indicated that multiple black male subjects were responsible for the multiple shots that were fired. Deputy Sheriff Mangino observed three black males running in the area in close proximity to the area where the shots were fired. The three black males were running away from the area from where the call indicated the shots were fired. When Deputy Sheriff Mangino ordered the three black males to stop, two of the males continued to run. These facts provide even more reasonable suspicion justifying an investigative detention than did the facts in *Jackson.* In *Jackson,* the police officers responded to a radio call ordering them to investigate a burglary. The complainant indicated a black male wearing a gray sweat shirt running on Vine Street was involved. *Jackson* was stopped two blocks from the complainant's home running towards the scene of the crime. When the defendant in *Jackson* was stopped, he did not attempt to flee. Thus, here, as in *Jackson,* the Juvenile was observed running in an area in close proximity to the scene of the crime. He matched a very general description given over the radio in that a group of black males who were responsible for the shooting were running away from the scene of the crime. The investigative detention was justified by the close spatial and temporal proximity of the suspect to the scene of the crime, and the general description of the perpetrator as black males running from the crime scene.

Facts which support the justification for a stop by way of an investigative detention do not necessarily justify a frisk of the person stopped for weapons nor a search of

his person or belongings. To justify a frisk incident to an investigatory stop, the police need to point to specific and articulable facts indicating that the person they intend to frisk may be armed and dangerous. The police must reasonably believe themselves to be in danger. It is held that the police may reasonably believe themselves to be in danger when the crime reported to have been committed is a violent crime or when the perpetrator is reported to possess or have used a weapon and whether the police observed suspicious behavior. The court finds such factors to exist in this case, while such factors did not exist in *Jackson.* In *Jackson,* the report of the offense related to a burglary, while here the report was that multiple shots were being fired. In *Jackson,* the perpetrator was not reported to possess or to have used a weapon, while the opposite is the case here where multiple perpetrators were reported to have fired gunshots. In *Jackson,* the defendant did not engage in any suspicious behavior, and in fact was running towards the crime scene, while here, the Juvenile and two other black males were running away from the crime scene, and further suspicious behavior was evident when the two black males with whom the Juvenile was with continued to flee after being ordered to stop. Thus, the court here finds that Deputy Sheriff Mangino reasonably believed himself to be in danger at the time that he effectuated the stop of the Juvenile, and therefore had a right to retrieve the firearm from the Juvenile.

The Juvenile contends that once the stop was effectuated, and the Juvenile was being held at gunpoint, Deputy Sheriff Mangino did not have the right to ask

him if he had a firearm as the Juvenile was not read his *Miranda* warnings before being asked that question. Upon being asked if he had a weapon, the Juvenile answered in the affirmative, which lead to the firearm being removed from him.

The court finds that this circumstance did constitute custodial interrogation and that *Miranda* was required. As stated in *Commonwealth v. Ingram,* 814 A.2d 264 (Pa. Super. 2002), the standard for determining whether an encounter with the police is deemed "custodial" is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the officer or the person seized. The test is whether the suspect is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by said interrogation. *Commonwealth v. Gonzalez,* 519 Pa. 116, 124, 546 A.2d 26, 29 (1988). Custodial interrogation does not require that the police make a formal arrest nor that the police intend to make an arrest. *Commonwealth v. Meyer,* 488 Pa. 297, 307, 412 A.2d 517, 521 (1980). *Miranda* warnings are required where a suspect is subject to custodial interrogation. Custodial interrogation has been defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way. *Commonwealth v. Hoffman,* 403 Pa. Super. 530, 545, 589 A.2d 737, 744 (1991). Here, after defendant was stopped, and was being held at gunpoint, the police asked him if

he had a weapon to which the defendant responded that he did. These facts constitute custodial interrogation made without *Miranda* warnings, therefore the statement of the defendant that he possessed a firearm must be suppressed. However, the failure to give *Miranda* warnings, although requiring that the statement be suppressed, does not require that the firearm eventually removed from the defendant nor the cocaine discovered as the result of a search incident to arrest be suppressed. The failure to give *Miranda* warnings relative to the eventual search of the defendant is irrelevant, because pursuant to the lawful *Terry* frisk, the officer would have discovered the gun in defendant's pocket. The defendant would have then been arrested for the firearms violation and then a search incident to arrest would have been conducted. At that point, the officer would have discovered the cocaine. This result is an application of the Inevitable Discovery Doctrine. Pennsylvania courts have recognized the Inevitable Discovery Doctrine. "In *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972), our Supreme Court held evidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence." *Commonwealth v. Hoffman, supra,* 403 Pa. Super. at 541, 589 A.2d at 743. The Inevitable Discovery Doctrine is based upon the united states supreme court decision in *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), which stated:

"It is clear that the cases implementing the exclusionary rule 'begin with the premise that the challenged evidence is in some sense the product of illegal govern-

ment activity.' *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). (emphasis added) Of course, this does not end the enquiry. If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means—here the volunteers' search—then the deterrence rationale has so little basis that the evidence should be received. Anything less would reject logic, experience, and common sense."

Here, the Commonwealth has met its burden of proving the inevitable discovery of the firearm and the cocaine. As above indicated, the police had sufficient facts upon which to base a *Terry* stop allowing for a stop and frisk of the defendant. A frisk of the defendant following the stop would have revealed the firearm which would have allowed the arrest of the defendant leading to the search of his person, thus allowing for the discovery and subsequent search and seizure of the cocaine. The question of the Deputy Sheriff was unnecessary, but an obvious reaction to the likelihood that the individual in his custody would have a firearm and therefore the Deputy Sheriff's heightened sense of the need to act for his own security to discover the firearm. Although Deputy Sheriff Mangino was not justified in questioning defendant about his possession of the firearm without giving him *Miranda* warnings, the police were authorized to frisk the defendant in order to locate the firearm. Once the firearm was retrieved and a basis to arrest the Juvenile existed, any subsequent search of the Juvenile was justified as a search incident to an arrest. *Commonwealth v. Williams,* 390 Pa. Super. 493, 568 A.2d 1281 (1990). This search yielded a quantity of crack cocaine.

The Juvenile was subsequently taken to the police station, *Mirandized* and questioned in the presence of his parent or guardian. As the result of this questioning, the Juvenile admitted that he had possessed the firearm, had found it, and had kept it for his protection. Since the Juvenile was *Mirandized* and gave the statement in the presence of his parent or guardian, the statement is not suppressible unless it was the product of an illegal arrest. Since this court has already explained how the stop and subsequent arrest of the Juvenile was lawful, it necessarily follows that the subsequent statement of the juvenile, after having been *Mirandized* and with a parent or guardian present, is not suppressible.

For the foregoing reasons, the court finds that the defendant's motion to suppress evidence must be denied, except as to the statements made by the juvenile at the time he was stopped by Deputy Sheriff Mangino, which statements are suppressed.

## ORDER

And now, May 12, 2010, in accordance with the accompanying opinion of even date herewith, it is ordered and decreed that the Juvenile's motion for suppress evidence is granted in part and denied in part.

The Juvenile's statement to Deputy Sheriff Mangino that he had a gun, made at the time of the initial stop suppressed. In all other respects, the motion to suppress is denied.

An adjudication hearing is hereby scheduled for June 29, 2010 at 9 o'clock a.m. in courtroom no. 4.